OPINION OF THE COURT
Jeffrey D. Lebowitz, J.
On October 10, 1997, a sex offender registration (Megan’s Law) hearing was conducted in Part AP-4 to determine defendant’s risk classification for purposes of his registration as a sex offender. The People contend that defendant is a level 2 (moderate) risk of repeat offense and danger to the community while defendant contends that he is a level 1 (low) risk.
The court’s findings of fact and risk assessment are as follows:
PROCEDURAL AND LEGISLATIVE HISTORY
On August 11, 1997, defendant pleaded guilty to Penal Law §§ 110.00 and 130.25 (2), attempted rape in the third degree, a class A misdemeanor, for engaging in sexual intercourse with the victim when she was 16 years old and the defendant was 45 years old. As such, defendant is defined as a sex offender and is subject to the notification procedures set forth in the New York Sex Offender Registration Act (hereinafter the Act). (Correction Law, art 6-C, § 168 et seq.) .
The Act is New York’s version of Megan’s Law, which was adopted in New Jersey after seven-year-old Megan Kanka was abducted, sexually assaulted and murdered by a neighbor who was a repeat sex offender. The Act provides for three levels of risk classification depending upon the offender’s danger to the community: level 1 (low risk), level 2 (moderate risk), and level *381 3 (high risk) (Risk Assessment Guidelines and Commentary, at 1 [1996 ed]). The offender’s risk level determines the amount of information that can be disseminated about him to law enforcement personnel or to the public, or both, under the Act’s notification procedures.
Under the Act, the Board of Examiners of Sex Offenders[1] promulgated an objective “Sex Offender Risk Assessment Instrument” to be utilized by the courts in determining a “presumptive risk level”. (Risk Assessment Guidelines and Commentary, at 3-7; Correction Law § 168-Z [5].) The risk assessment instrument assigns numerical values to specific risk factors under the topical headings: Current Offense(s); Criminal History; Post-Offense Behavior; and Release Environment. A presumptive risk level is calculated by adding the total number of points scored in each category. If the total score is 70 points or less, the offender is presumptively level 1; if more than 70 but less than 100, he is presumptively level 2; if 110 or more, he is presumptively level 3. (Risk Assessment Guidelines and Commentary, at 3.)
RISK ASSESSMENT
In the case at bar, a sentence of incarceration is not being imposed;[2] therefore, the court is required, pursuant to the Act, to independently determine the duration of registration and level of notification appropriate for this defendant. (Correction Law § 168-d [3].) On October 10, 1997, the court conducted a Megan’s Law hearing where the defendant, defense counsel and the prosecutor were present. Each side was afforded the opportunity to argue and present evidence.
In accordance with the Act, the victim was allowed to make a statement and the defendant was given the opportunity to be heard and to submit materials relevant to the court’s determination. (Correction Law § 168-d [3].) The victim made a victim impact statement in open court. The defendant declined the opportunity to be heard on the issue but offered the testimony of his wife, Florence Terdeman, to establish the nature of *382 defendant’s relationship with the victim. The People ware permitted to cross-examine defendant’s wife. Additionally, defendant presented two letters, purportedly from the victim, to support defendant’s argument that the relationship between the defendant and the victim was familial in nature. In making its determination, the court has reviewed the evidence and arguments set forth at the hearing, as well as the court file, the probation report and defendant’s memorandum of law. (See, Risk Assessment Guidelines and Commentary, at 5.)
At the commencement of the hearing, both sides informed the court that they had stipulated to scores for all factors in the risk assessment instrument except two: factor four, “duration of offense conduct with victim” (continuing course of sexual misconduct), and factor seven, “relationship with victim” (stranger or established for the purpose of victimizing or professional relationship). (Hearing transcript, at 3-6.) The People contend that defendant is a level 2 (moderate) risk, with a total score of 85; while the defendant contends that he is a level 1 (low) risk, with a total score of 45 points. The contested factors, four and seven, are valued at 20 points each.
The court has reviewed the undisputed factors and finds no reason to disturb the stipulation of the parties: the agreed upon scores have a rational basis in fact and comport with the Guidelines. The only issue remaining before the court, therefore, is whether there is clear and convincing evidence of the existence of the two contested factors. (Risk Assessment Guidelines and Commentary, at 6.) The court has utilized the Risk Assessment Guidelines and Commentary in making the following determination.[3]
FACTOR four: DURATION OF OFFENSE CONDUCT WITH VICTIM
Factor four of the risk assessment instrument assesses points if the offender “engaged in a continuing course of sexual misconduct with at least one victim”. According to the Guidelines, “[t]his category is designed to reflect the fact that some offenders, particularly those who prey on young children, *383 manifest their compulsive behavior by engaging in a continuing course of sexual misconduct with the same victim.” (Risk Assessment Guidelines and Commentary, at 10.)
Defendant contends that he should not be assessed points in this category because he pleaded guilty to “one charge and one incident only,” which took place on February 26, 1993, and that his plea restricts a finding of continuous conduct. (Defendant’s mem, at 4.) Defendant further contends that this factor is inapplicable to him because “there has been no demonstration to this Court by clear and convincing evidence that there have [sic] been any other sexual misconduct committed by the Defendant since February 1993.” (Defendant’s mem, at 4.)
The court disagrees: it is clear from the Guidelines and accompanying Commentary that the Board of Examiners created risk factor four specifically for this type of case. The materials before the court establish by clear and convincing evidence that defendant engaged in a continuing course of sexual conduct with the victim. The victim testified that the sexual abuse began with kisses and sexual contact when she was 10 years old and progressed to sexual intercourse from the time she was 13 years old until she was approximately 16 years old. The victim testified in a straightforward and credible manner. As noted by the United States Court of Appeals in determining the applicability of Megan’s Law, “[s]ex offenses are almost always committed in private * * * potential witnesses with relevant knowledge of whether, and * * * how, an alleged sex offense occurred are generally limited to the victim and the alleged offender.” (E.B. v Verniero, 119 F3d 1077, 1108 [3rd Cir].) Here, the victim’s claims are further buttressed by defendant’s admission, through his attorney at. the hearing, that “we could agree on at least a bare statement that it may have happened more than once * * * more than once and stopped four and a half years ago.” (Hearing transcript, Greene, at 6.)
The Risk Assessment Guidelines and Commentary (at 10) provides, as an example, an analogous situation to the case at bar, stating, “[t]he offender who sexually abuses his girlfriend’s young daughter over a period of several weeks falls into this 20-point category.” To further ensure that there is no ambiguity surrounding this factor’s assessment, the Board has defined “continuing course of sexual misconduct” as when an offender engages in either “(i) two or more acts of sexual misconduct, at least one of which is an act of sexual intercourse, deviate sexual intercourse, or aggravated sexual abuse, which acts are *384 separated in time by at least 24 hours, or (ii) three or more acts of sexual misconduct over a period of at least two weeks.” (Risk Assessment Guidelines and Commentary, at 10.) Defendant’s conduct clearly falls within this definition.
Contrary to defendant’s claims, the Board makes no distinction between prior and subsequent conduct. The fact that defendant is not alleged to have engaged in sexual misconduct with the victim after February of 1993 is not dispositive of this issue.
Finally, the court finds no compelling reason to depart from the Guidelines. According to the Guidelines, “[t]he expectation is that the instrument will result in the proper classification in most cases so that departures will be the exception not the rule.” (Risk Assessment Guidelines and Commentary, at 4.) This defendant, while in his forties, repeatedly preyed upon the vulnerabilities of a young girl who was related to his wife and who was taken into his family as “a daughter.” (Hearing transcript, Florence Terdeman, at 26.)
The court finds that there is clear and convincing evidence of the existence of this factor and assesses 20 points towards the defendant’s total score.
FACTOR SEVEN: RELATIONSHIP WITH VICTIM
The Guidelines assess 20 points if the offender’s crime “(i) was directed at a stranger or a person with whom a relationship had been established or promoted for the primary purpose of victimization or (ii) arose in the context of a professional relationship between the offender and the victim and was an abuse of such relationship.” (Risk Assessment Guidelines and Commentary, at 11.) The People contend that defendant should be assessed points in this category because the relationship was established for the primary purpose of victimization while the defendant contends that this factor is inapplicable because the relationship was familial in nature.
It is uncontested that the victim and the defendant’s wife are cousins and that the victim is her godchild. According to defendant’s wife, defendant treated the victim “like a daughter,” and she was a frequent visitor to the defendant’s house. (Hearing transcript, Florence Terdeman, at 26-31.) Although defendant tutored the victim in math for “approximately one month, one night a week, “ the court does not find that defendant established this tutoring relationship for the primary purpose of victimization. (Hearing transcript, Florence Terdeman, at 33.) Moreover, the victim did not allege that any *385 incidents of sexual misconduct took place during the tutoring sessions. Defendant also provided the court with letters from the victim which support defendant’s contentions that the victim had a close personal relationship with defendant’s family and that they were the victim’s confidantes. The evidence presented by both sides establishes by clear and convincing evidence that the relationship was familial in nature. As such, defendant does not fall within the parameters of this category.
The Guidelines draw an express distinction between the relationships covered in the definition and “familial relationships”. The Board cites the following examples to clarify which type of relationship falls into this category: “An uncle who offends against his niece would not generally fall in this category. A scout leader who chooses his profession to gain access to victims and ‘grooms’ his victims before sexually abusing them would qualify * * * A dentist who sexually abuses his patient while she is anesthetized would fall squarely in this category” (Risk Assessment Guidelines and Commentary, at 12). The Board explains that the exclusion of “familial relationships” was “not meant to minimize the seriousness of [familial abuse]” rather it was a recognition that the need for community notification is “greater when the offender strikes at persons who did not know him well or who have sought out his professional care.” (Risk Assessment Guidelines and Commentary, supra, at 11-12, n 7.)
The court finds that the existence of factor seven is not supported by clear and convincing evidence.
In light of the foregoing, the court assesses a total of 65 points to this defendant and finds that defendant is classified as a level 1 (low) risk.

. To establish the Guidelines, the Board of Examiners employed the assistance of a group of experts with diverse experience in dealing with sex offenders. (Risk Assessment Guidelines and Commentary, appendix.)

. In a plea bargain between the prosecution and the defense, defendant has been promised a sentence of three years’ probation, the CAPS sex offender program and a full order of protection. While the court determines the presumptive risk level of nonincarcerated defendants, incarcerated defendants require a recommendation of risk level from the Board of Examiners first. (Correction Law § 168-Z [6].)

. It should be noted that there is a lack of case law expounding on the assessment of each factor due to the fact that there is no statutory provision upon which an appeal from a determinative hearing (such as a Megan’s Law hearing) may be predicated. (See, e.g., People v Stevens, 235 AD2d 440 [2d Dept 1997].) As such, the only challenges considered by the appellate courts are based upon constitutional grounds of violation of the Ex Post Facto Clause and of due process and equal protection (whether defendant had an opportunity to be heard and whether the manner of classification was arbitrary and capricious).