OPINION OF THE COURT
Ruth Levine Sussman, J.
In a proceeding arising under the Sex Offender Registration Act (Correction Law art 6-C [SORA]), the court confronts issues of first impression concerning the admissibility of Grand Jury minutes and evidence of prior convictions which occurred more than 10 years ago. In a proceeding for a determination of the defendant’s appropriate “risk level” the Board of Examiners of Sex Offenders (Board) recommends that defendant be assigned a designation of risk level three, corresponding to a finding that defendant is a “sexually violent predator,”[2] which mandates the highest degree of notification under the SORA. *30 Following a hearing held on August 4, 2000, this court concludes, based on clear and convincing evidence, that downward departure from the recommendation of the Board is unnecessary and unwarranted, and, accordingly, defendant is properly found to be a risk level three.
Facts Concerning the Underlying Conviction
In a felony complaint dated July 30, 1998, defendant was charged with two counts of rape in the first degree and numerous other offenses committed against his two minor “stepdaughters.”* *[3] Specifically, in addition to the rape charges, the complaint charges that in the period between August 1, 1996, and July 27, 1998, defendant sexually assaulted and molested his two minor stepdaughters and performed sexual acts on himself in their presence. The complaint further alleges that the defendant held a handgun to the heads of his two minor stepdaughters, and also threatened to kill their mother if they revealed the defendant’s conduct.
On August 27, 1998, defendant waived indictment, and pleaded guilty to a superior court information charging defendant with a single count of attempted sodomy in the second degree. On August 27, 1998, defendant was sentenced pursuant to a negotiated plea to IV2 to 3 years’ incarceration.
Recommendation of the Board
For all sex offenders sentenced or released from a State correctional or mental institution after the effective date of the SORA, the sentencing court is required, at the time of the offender’s discharge, to determine the appropriate risk level. (Correction Law § 168-d [3]; § 168-n [2].) The defendant’s status has been reviewed by the Board, which has rendered a recommendation assessing defendant as a risk level three,[4] having calculated a total risk factor score of 165, based on defendant’s past history and the conduct underlying the present convic *31 tion.[5] The case summary prepared by the Board recites that defendant engaged in multiple acts of sexual contact with the teenaged victims; that he engaged in threats of violence involving the use of a weapon; and that the defendant denied his guilt in a letter to the Board, in which he ascribes the charges to a “plot” by the teenaged victims, ages 13 and 14, in response to the defendant’s discipline of the victims. The case summary also indicates that defendant committed an armed robbery as a youth, and was later convicted as an adult of felony drug sales.
Hearing Testimony
At the hearing, the court admitted into evidence, over defendant’s objection, the presentence report, the Grand Jury minutes, a letter (and an English translation thereof) written by defendant to the Board in which he denied criminal responsibility, and defendant’s “rap sheet.”
Independent from his objections as to admissibility, defendant’s counsel objected to any information derived from the probation report, on the ground that the probation officer was unable to identify defendant in court at the time of the hearing, and to any information contained in the Grand Jury minutes, on the ground that the defendant’s prior conviction was too remote in time to have probative value. The court addresses, seriatim, each of defendant’s arguments with respect to the admissibility and weight of evidence in evaluating and the calculation of the risk assessment score.
Discussion
Role of the Court in Determining Risk Level
In addressing the arguments raised by defendant, it is useful to examine the nature of the present proceeding. The People have the burden of establishing the facts on which the risk assessment is based by clear and convincing evidence. (Correc *32 tion Law § 168-n [3] [“The state shall appear by the district attorney, or his or her designee, who shall bear the burden of proving the facts supporting the duration of registration and level of notification sought by clear and convincing evidence”]; People v Salaam, 174 Misc 2d 726 [Sup Ct, NY County 1997]; see also, E.B. v Verniero, 119 F3d 1077 [3d Cir 1997] [clear and convincing evidence standard applies to the risk assessment determination under New Jersey’s Megan’s Law].) In determining the appropriate risk level, the court is not bound by the recommendation of the Board, and, in its exercise of discretion, may depart from the Board’s recommendation and determine the sex offender’s risk level based on facts and circumstances that appear in the record. (Matter of New York State Bd. of Examiners of Sex Offenders v Ransom, 249 AD2d 891 [4th Dept 1998] [Board serves in advisory capacity that is similar to role served by Probation Department].) The parties may present witnesses and offer evidence. (People v Recor, 209 AD2d 831 [3d Dept 1994], affd 87 NY2d 933 [1996]; People v Tyrrell, 101 AD2d 946 [3d Dept 1984].) The offender has a right to be heard, and to be represented by counsel. (Correction Law § 168-n [3]; People v David W., 95 NY2d 130 [2000].) Analogous to a sentencing determination, the court making the risk assessment determination has latitude in the type and nature of evidence it may consider and is not bound by the formal rules of evidence. (See, People v Salaam, 174 Misc 2d 726 [Sup Ct, NY County 1997].)
Use of Grand Jury Testimony at SORA Hearings
Despite the provision in SORA permitting the use of hearsay, defendant argues that the Grand Jury testimony of the victims is unreliable, and thus should not be employed to furnish the facts on which defendant’s level of risk assessment was calculated. In effect, defendant argues that the presence of the victims would have been necessary at the hearing to establish the nature and extent of defendant’s criminal conduct, since the extent of his criminal conduct, as found by the Board, extends beyond the limited criminal liability to which defendant admitted in pleading guilty.
Although defendant assails the use of Grand Jury testimony at SORA hearings, Grand Jury testimony is undeniably probative, and has historically been admitted in a variety of proceedings, under appropriate circumstances, including at trial where the standard for the admission of such testimony is clearly much greater. For example, the minutes of Grand Jury *33 testimony have been admitted at trial as direct evidence when a witness’s unavailability is attributable to the defendant’s misconduct, or the misconduct of others acting on behalf of or at the behest of the defendant (People v Tuzzio, 201 AD2d 595 [2d Dept 1994]; People v Geraci, 200 AD2d 758 [2d Dept 1994]; see also, e.g., People v Carpenito, 80 NY2d 65, 68-69, affg 171 AD2d 45 [2d Dept 1991]). In addition, Grand Jury testimony is admissible at trial to impeach a witness (People v Summers, 49 AD2d 611 [2d Dept 1975]).
Specifically, in the context of SORA hearings, the use of Grand Jury minutes is amply supported by controlling authority. The statute itself directs that the court “may consider reliable hearsay evidence.” (Correction Law § 168-n [3]; see, People v Jimenez, 178 Misc 2d 319 [Sup Ct, Kangs County 1998].) For the reasons set forth therein, and following the stricture of the statute with respect to the admissibility of reliable hearsay evidence, the court admitted into evidence the Grand Jury minutes containing the testimony of a second victim, finding that the Grand Jury minutes and photographic evidence were reliable in establishing evidence of sex abuse. Similarly, a felony complaint and the supporting deposition of the complainant, which are likewise not subject to cross-examination, have been found to be reliable and admissible hearsay in SORA hearings. (People v Sumpter, 177 Misc 2d 492 [Crim Ct, Queens County 1998].) Under the circumstances of a SORA risk assessment proceeding, the court finds that compelling considerations favor the admission of the victims’ Grand Jury testimony and evidence to establish the commission and extent of multiple sexual crimes. Defendant, by his plea, has admitted the commission of the crime of attempted sodomy, and SORA prohibits him from relitigating his guilt of that charge as “[flacts previously proven at trial or elicited at the time of entry of a plea of guilty shall be deemed established by clear and convincing evidence.” (Correction Law § 168-n [3].) The practical reality of SORA risk assessment proceedings is that where a defendant was convicted by a plea of guilt to a lesser offense than those for which he was charged, the defendant may attempt to avoid an admission of the full extent of the conduct leading to his or her conviction.[6] In cases subject to SORA, where the victims are often minors, prosecutors are *34 more inclined to accept a plea to a reduced charge to avoid exposing the victims to the further emotional distress which would ensue if the victim was required to elucidate the full extent and nature of the underlying criminal conduct in open court. If the testimony of the victims was required at the SORA hearing, the focus of the hearing would impermissibly shift to the issue of defendant’s guilt or innocence, at least to the extent that the defendant’s guilt has not already been established by plea or otherwise. Given the extended history of the abuse of the infant victims, and the threats of violence made by defendant should they reveal the abuse, the court is loathe to require that they testify unless a valid basis is advanced for requiring their presence at the hearing.
This court is not the first to conclude that the victim need not be called as a witness in order to admit evidence on the original charge through the Grand Jury minutes. In one case, the court denied the sex offender’s request to call his 14-year-old victim as a witness at a hearing in which he challenged the risk level assessment as determined by the Board of Examiners of Sex Offenders. (People v Tucker, 177 Misc 2d 418.) As the court stated in Tucker (at 421), a case which involved an 11-hour sexual assault of a male victim: “With respect to the request of the defendant to call the victim as a witness, this court notes that at the time the Sex Offender Registration Act was introduced, the New York State Senate Memorandum in Support stated, ‘Protecting the public, especially children, from sex offenders is a primary governmental interest and the registration of convicted sex offenders reentering the community is a control that helps protect individuals from victimization. This bill, with provisions based on the federal law and experiences of other states, represents a balanced and comprehensive approach to this effort.’ * * * Clearly if this court allowed the defense to call the victim as a witness in this hearing it would be violating the spirit of the Sex Offender Registration Act and undermining the intent of the Legislature.”
The role of the court in cases of this type is to weigh the reliability and probative value of the hearsay evidence, and to admit that evidence provided it is established to be reliable. Accordingly, the admission of Grand Jury testimony to establish the conduct surrounding the defendant’s conviction is con *35 sistent with the explicit provisions of SORA, as well as basic principles of justice.
In view of the totality of the evidence in this case, the court finds that the Grand Jury testimony is reliable. Defendant has at no time adduced any evidence of any kind whatsoever which suggests in any manner that the statements contained in the Grand Jury minutes are inaccurate, other than his own self-serving statement. Defendant’s blanket denials of any wrongdoing whatsoever, and his contrived allegations of a “plot” concocted by the victims, are in conflict with his freely undertaken plea of guilt in pleading guilty. His protests are obviously suspect, and are not credited by the court as probative.
In short, when no cogent evidence is offered to cast doubt on the Grand Jury testimony, and when all of the attendant evidence and indicia circumstantially support the reliability of that evidence, hearsay evidence in the form of Grand Jury testimony constitutes competent and probative evidence which will support a determination of the risk level posed by the sexual offender under the statute.
Use of the Probation Report
Defendant’s challenge to the introduction of his probation report is predicated on the failure of the probation officer to identify the defendant at the hearing. Defendant’s failure to object to the introduction of the probation report under the business record exception to the hearsay rule and the probation officer’s failure to identify the defendant does not materially impair the reliability or use of the report. A SORA hearing is not a criminal trial; the identity of the defendant was not in issue. Defendant has not demonstrated that any factual matter contained in the report of the Department of Probation was misrepresented, nor does defendant present any evidence that the report is otherwise inaccurate or unreliable. The court finds that the probation report is “reliable” hearsay evidence, and was consequently admissible at the SORA hearing.
Evidence of Prior Violent Criminal Acts
Defendant further contends that the addition of 30 points to his total SORA risk score, based on the commission of a prior violent felony, was improper, since his conviction for attempted robbery in the second degree occurred more than 13 years ago.
There is, as defendant concedes, no explicit statutory time limitation placed on a prior criminal act which will warrant its exclusion from consideration under the risk assessment *36 scheme. Since the Legislature has not hesitated to explicitly impose a time limitation on the use of prior felony convictions in other contexts, such as the 10-year time limitation for the purpose of enhanced punishment (Penal Law § 70.06 [1] [b] [iv]), the failure to impose a limitation in this context suggests that the matter is left entirely to the considered discretion of the court.
The precise issue appears to be one of first impression. It may be that in a proper case, the commission of a prior violent felony will be so remote in time as to render its consideration unfair to a particular defendant. Despite the absence of any rigid rule in the present context, it remains true that, as noted in another context, “Lapse of time, however, will affect the materiality if not the relevance of previous conduct.” (People v Sandoval, 34 NY2d 371, 376.) While the particular criminal act now at issue occurred some 13 years prior to the instant conviction, in the opinion of the court, the defendant’s prior act of violence would strike a reasonable mind as not so remote in time as to be excluded from consideration in assessing the risk which defendant poses to society. Indeed, the inclusion for consideration of the defendant’s criminal act is buttressed by his continuing commission of both violent and nonviolent criminal conduct in the intervening time before his commission of the crime which is the subject of this proceeding.[7] (See, People v Reitman, as discussed in Halasa, Prior Conviction Counts in Assessing Risk Level, NYLJ, Aug. 21, 2000, at 1, col 5 [inclusion of nine-year-old prior conviction for SORA risk assessment proceeding does not violate due process].) The court holds that the prior conviction is a proper indicator of the level of risk defendant poses to society in general, and warrants inclusion. As the court noted at the hearing, even if these disputed 30 points were excluded entirely, defendant would still qualify as a level three risk.
Conclusion
Based on clear and convincing evidence, the court calculates the defendant’s risk assessment score of 160 as follows: (1) use *37 of violence — 30, based on the fact that defendant was armed with a weapon; (2) sexual contact with victim — 25, based on aggravated sexual abuse; (3) number of victims — 20; (4) duration of offense conduct with victim — 20; (5) age of victim — 20; (6) other victim characteristics — 0; (7) relationship between offender and victim — 0; (8) age at first sex crime — 0; (9) number and nature of prior crimes — 30; (10) recency of prior offense — 0; (11) drug or alcohol abuse — 0; (12) acceptance of responsibility — 10; (13) conduct while confined or under supervision — 0; (14) supervision after release — 5; and (15) release environment — 0. In reaching this conclusion, the court finds that the documentary evidence containing the victims’ statements, and the defendant’s criminal history, constitutes reliable hearsay. No factor has been cited by defendant which warrants departure from the level three determination based on the total score assigned to defendant. Indeed, if anything, the extended nature of his abuse of the infant victims and his threats of violence clearly and convincingly support the finding that defendant represents the highest level of risk to society, even if the total point score assigned to defendant did not itself fall into the level three category.
By clear and convincing evidence, the People have established that defendant is a level three risk sexual offender. In particular, the People have established, through reliable hearsay evidence, that defendant has engaged in conduct which warrants the reporting, review, and notice procedures of SORA, and that defendant poses the highest risk to society, warranting the highest level of scrutiny.
Accordingly, the defendant is found to be a level three risk.

. A sexually violent predator is a person who has been convicted of a sexually violent offense, or a sex offender who suffers from a mental *30 abnormality rendering it likely that the person will engage in predatory sexual conduct. (Correction Law § 168-a [7].)

. Although the victims are referred to as defendant’s “stepdaughters,” the defendant was not in fact married to the mother of the infant victims.

. Under SORA, a score is calculated for sex offenders by computing a point value for each of 15 separate factors, and then aggregating the total for the 15 categories. A combined score of between 0 to 70 warrants a level one, low risk, designation; a score between 75 to 105 yields a level two, or moderate risk, designation; and a score of 110 points or greater mandates a level three, high risk, designation.

. As calculated by the Board, the defendant was ascribed the following points for each of the following 15 risk categories: (1) use of violence — 30, based on the fact that defendant was armed with a weapon; (2) sexual contact with victim — 25, based on aggravated sexual abuse; (3) number of victims— 20; (4) duration of offense conduct with victim — 20; (5) age of victim — 20; (6) other victim characteristics — 0; (7) relationship between offender and victim — 0; (8) age at first sex crime — 0; (9) number and nature of prior crimes — 30; (10) recency of prior offense — 10; (11) drug or alcohol abuse — 0; (12) acceptance of responsibility — 10; (13) conduct while confined or under supervision — 0; (14) supervision after release — 0; and (15) release environment — 0.

. See, e.g., People v Terdeman (175 Misc 2d 379 [Crim Ct, Queens County 1997]), in which the court held that defendant could be assessed points for engaging in continuing course of sexual misconduct with the victim, even though he pleaded guilty to only one incident, when the victim testified that *34 the sexual abuse commenced when she was 10 years old and lasted until she was 16.

. An examination of defendant’s criminal record indicates that in 1988 defendant was convicted of attempted grand larceny in the third degree, criminal mischief in the third degree, and possession of burglar tools. In 1990, defendant was convicted of grand larceny in the third degree, criminal mischief in the third degree, possession of a controlled substance in the seventh degree, possession of burglar tools and unauthorized use of a vehicle. In 1991 defendant was convicted of criminal sale of a controlled substance in the fifth degree.