[876 NYS2d 814]

The People of the State of New York, Respondent, v Edward R. Stein, Appellant.

Fourth Department, April 24, 2009

**APPEARANCES OF COUNSEL**

*Edward R. Stein*, pro se, and *Audrey Baron Dunning*, Herkimer, for appellant.

*John H. Crandall, Sr., District Attorney*, Herkimer (*Jacquelyn M. Asnoe* of counsel), for respondent.

**OPINION OF THE COURT**

GREEN, J.

Defendant was convicted upon his plea of guilty of criminal sexual act in the second degree (Penal Law § 130.45 [1]) as the result of his admitted sexual conduct with a 14-year-old girl. He was sentenced to a term of incarceration and, upon his anticipated release, the Board of Examiners of Sex Offenders (Board) prepared a Risk Assessment Instrument (RAI). Based upon the total risk factor score of 85 on the RAI, defendant was presumptively classified as a level two risk pursuant to the Sex Offender Registration Act ([SORA] Correction Law § 168 *et seq.*). All of the points were assessed under the category of "CURRENT OFFENSE(S)" and included 25 points under risk factor 2, "Sexual Contact with Victim," 20 points under risk factor 4, "Duration of Offense Conduct with Victim," 20 points under risk factor 5, "Age of Victim," and 20 points under risk factor 7, "Relationship Between Offender and Victim." The Board did not find that any overrides were applicable, nor did it recommend a departure from defendant's presumptive level two classification.

At the SORA hearing, the People agreed with the Board's assessment and asked County Court to determine that defendant is a level two risk. Defendant, however, challenged the assessment of 20 points under risk factor 7, "Relationship Between Offender and Victim," on the ground that his relationship with the victim was not that of a "[s]tranger or established for purpose of victimizing or professional relationship," as set forth in the RAI. In its case summary, the Board indicated that points were assessed under that risk factor because the victim was defendant's foster child and the offense arose from the "abuse of a professional relationship." At the SORA hearing, the People adopted the Board's position with respect to that risk factor.

The court agreed that points were properly assessed under risk factor 7, but not on the ground that defendant abused his

professional relationship with the victim. Rather, the court agreed with defendant that such a professional relationship was lacking, but the court nevertheless concluded that 20 points were appropriately assessed under risk factor 7 because the evidence demonstrated that defendant established his foster parent relationship with the victim for the purpose of victimizing her.

We conclude that none of the grounds for assessing points under risk factor 7 applies under the circumstances of this case and that defendant's risk factor score must therefore be reduced by 20 points.

The Risk Assessment Guidelines and Commentary provide some limited guidance with respect to the interpretation and application of risk factor 7:

> "The guidelines assess 20 points if the offender's crime (i) was directed at a stranger *or* a person with whom a relationship had been established or promoted for the primary purpose of victimization *or* (ii) arose in the context of a professional or avocational relationship between the offender and the victim and was an abuse of such relationship" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary [Guidelines], at 12 [2006] [emphasis added]).

Thus, risk factor 7 may apply in three distinct situations. The first, where the crime is directed at a stranger, clearly does not apply here (*see People v Geier*, 56 AD3d 539, 540 [2008]; *see also People v McGraw*, 24 AD3d 525, 526 [2005]; *cf. People v Milton*, 55 AD3d 1073 [2008]). The court found that the facts came within the second scenario, i.e., the relationship was "established or promoted for the primary purpose of victimization" (Guidelines at 12). In our view, however, the record lacks clear and convincing evidence to support that conclusion. Statements by defendant and the victim to the police indicate only that the victim is the foster child of defendant and his wife and that the victim began living in their foster home approximately three months before defendant initiated a course of sexual conduct against her. Prior to the current offense, defendant had no criminal record, and there is no evidence that he sexually victimized a child in the past (*cf. People v Marinconz*, 178 Misc 2d 30, 37 [1998]). In addition, there is no evidence that would support an inference that defendant became a foster parent in order to gain access to children for the purpose of sexually abusing them

(*cf. People v Carlton*, 307 AD2d 763, 764 [2003]; *Marinconz*, 178 Misc 2d at 37), or that he established his relationship with the victim "for the primary purpose of victimization" (Guidelines at 12; *see People v Terdeman*, 175 Misc 2d 379, 384 [1997]; *cf. People v Mollenkopf*, 54 AD3d 1136, 1137 [2008]; *People v Grosfeld*, 35 AD3d 692, 693 [2006]).

The People contend that the Board properly assessed 20 points against defendant under the third scenario set forth under risk factor 7, i.e., where the crime arose out of a professional relationship between defendant and the victim (*see generally People v Thomas*, 300 AD2d 379 [2002], *lv denied* 100 NY2d 502 [2003]). We reject that contention. To conclude that the relationship between a foster parent and a foster child is a professional relationship is to distort the nature of that relationship and to ignore the policy served by recognition of this risk factor.

Social Services Law § 371 (19) defines " '[f]oster parent' " as "any person with whom a child, in the care, custody or guardianship of an authorized agency, is placed for temporary or long-term care." Neither that simple definition nor the detailed requirements for certification or approval as a foster parent support the conclusion that the foster care relationship is a professional one or that a foster parent is a professional for purposes of risk factor 7 (*see generally* 18 NYCRR parts 427, 443). The qualities necessary for a foster parent are not those generally associated with a professional, i.e., "extensive formal learning and training, licensure and regulation indicating a qualification to practice, a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards" (*Chase Scientific Research v NIA Group*, 96 NY2d 20, 29 [2001]). Rather, "[t]he foster parent-child relationship is . . . intended to provide the child with the benefits of a family setting" (*People ex rel. Ninesling v Nassau County Dept. of Social Servs.*, 46 NY2d 382, 387 [1978], *rearg denied* 46 NY2d 836 [1978]). In short, the foster parent's role is familial, not professional.

In the Guidelines, the Board explicitly distinguishes "cases where the relationship is other than that of stranger or professional," which are encompassed by risk factor 7, from those cases in which the relationship is "familial," which are not encompassed by that risk factor (Guidelines at 12 n 8; *see Terdeman*, 175 Misc 2d at 385). The Guidelines generally exclude from this risk factor "[a]n uncle who offends against his niece," while including a person from whom a victim has sought profes-

sional care, such as a dentist (Guidelines at 12). Defendant's foster parent relationship with the victim more closely resembles that of an uncle than that of a dentist. The Guidelines further note that the distinction between familial and professional relationships is not based upon the gravity of the crime or the harm to the victim. Here, defendant abused and exploited his relationship with a foster child whose care and protection were entrusted to him. His violation of that relationship of trust and confidence was likely more destructive than that of "[a] dentist who sexually abuses [a] patient while the patient is anesthetized," although the former relationship "fall[s] squarely within" risk factor 7 (*id.*). Nevertheless, the public safety concerns triggered by intrafamilial offenders and professionals are different. "[T]here is a heightened concern for public safety and need for community notification" (*id.*) when the offender directs the crime "at persons . . . who have sought out his [or her] professional care" (*id.* n 8), and that is not the situation here.

We therefore conclude that defendant was improperly assessed 20 points under risk factor 7. Reducing his risk factor score by 20 points changes his presumptive classification to a level one risk, and the People have not sought an override or a departure from the presumptive classification (*see* Correction Law § 168-n [3]). Accordingly, we conclude that the order should be modified by determining that defendant is a level one risk pursuant to SORA.

SCUDDER, P.J., PERADOTTO, CARNI and GORSKI, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously modified, on the law, by determining that defendant is a level one risk pursuant to the Sex Offender Registration Act and, as modified, the order is affirmed, without costs.