THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES D. CARLTON, Appellant. [911 NYS2d 752]—

Appeal from an order of the Ontario County Court (Frederick G. Reed, J.), entered July 27, 2009. The order determined that defendant is a level three risk pursuant to the Sex Offender Registration Act.

It is hereby ordered that the order so appealed from is affirmed without costs.

Memorandum: On appeal from an order determining that he is a level three risk pursuant to the Sex Offender Registration Act (Correction Law § 168 *et seq.*), defendant contends that County Court erred in failing to set forth its findings of fact and conclusions of law, as required by Correction Law § 168-n (3). Although defendant is correct that the court failed to do so, we nevertheless conclude that the record before us is sufficient to enable us to make our own findings of fact and conclusions of law, thus rendering remittal unnecessary (*see People v Urbanski*, 74 AD3d 1882 [2010], *lv denied* 15 NY3d 707 [2010]; *cf. People v Leopold*, 13 NY3d 923 [2010]).

We reject the further contention of defendant that the court erred in assessing 20 points against him under the risk factor for his relationship with the victims and 25 points against him under the risk factor for drug or alcohol abuse. Based on the record before us, we conclude that the People established both of the disputed risk factors by the requisite clear and convincing evidence (*see* Correction Law § 168-n [3]). With respect to defendant's relationship with the victims, the case summary establishes that, when interviewed by the Board of Examiners of Sex Offenders, defendant stated that he was employed as a bus driver of mentally disabled women at the time of the underlying crimes and that he selected the three victims because he believed they were incapable of reporting his crimes. Such evidence establishes that defendant had a professional relationship with the three victims, thus justifying the assessment of 20 points with respect to that risk factor (*see generally People v Stein*, 63 AD3d 99, 101-102 [2009]).

Further, with respect to defendant's history of drug and alcohol abuse, the presentence report establishes that defendant began drinking alcohol at age 11 and using marihuana at age 14 and that he used LSD and "angel dust" for a period of approximately seven years. Defendant also reported that he was addicted to cocaine, marihuana and alcohol. Those facts constitute clear and convincing evidence of defendant's history of drug and alcohol abuse, thus justifying the assessment of 25 points with respect to that risk factor (*see Urbanski*, 74 AD3d 1882, 1883; *see also People v Guitard*, 57 AD3d 751 [2008], *lv denied* 12 NY3d 704 [2009]).

All concur except Martoche and Centra, JJ., who dissent and vote to modify in accordance with the following memorandum.

Martoche and Centra, JJ. (dissenting). We respectfully dissent because we conclude that, following a hearing pursuant to the Sex Offender Registration Act ([SORA] Correction Law § 168 *et seq.*), County Court erred in assessing 20 points against defendant under risk factor 7, for his relationship with the victims. Defendant was convicted of sexual crimes against three mentally disabled women when he was their bus driver. The Risk Assessment Guidelines assess 20 points under risk factor 7 "if the offender's crime (i) was directed at a stranger or a person with whom a relationship had been established or promoted for the primary purpose of victimization or (ii) arose in the context of a professional or avocational relationship between the offender and the victim and was an abuse of such relationship" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 12 [2006]). The Risk Assessment Guidelines advise that, in each of those situations, "there is a heightened concern for public safety and need for community notification" (*id.*). Here, the court assessed 20 points against defendant after determining that defendant was in "an avocational profession."

Here, the first category under risk factor 7 is not applicable. Defense counsel and the People agreed at the SORA hearing that the crimes were not directed at strangers, and there was no evidence that defendant became a bus driver to gain access to the victims to abuse them. With respect to the second category, we note that the risk assessment guidelines do not define a "professional or avocational relationship," but they provide that the second category "reaches health care providers and others who exploit a professional relationship in order to victimize those who repose trust in them. A dentist who sexually abuses his [or her] patient while the patient is anesthetized would fall squarely within [that] category" (Risk Assessment Guidelines and Commentary, at 12). We cannot agree with the majority that defendant had a professional relationship with the victims to justify the assessment of 20 points under risk factor 7. Black's Law Dictionary defines a "professional relationship" as "[a]n association that involves one person's reliance on the other person's specialized training . . . Examples include one's relationship with a lawyer, doctor, insurer, banker, and the like" (Black's Law Dictionary 1402 [9th ed 2009]). Although a passenger on a bus certainly places his or her trust in the bus driver and relies to a certain extent on the bus driver's training, such a relationship or association is not akin to that of a health care provider and his or her patient. There is no indication that

the victims here or their caretakers sought out defendant based on his bus driving skills, as would a person seeking the services of a health care provider or other such professional.

We disagree with the court to the extent that it concluded that defendant and the victims were in an avocational relationship. That term is not defined in the risk assessment guidelines, but "avocation" customarily refers to a hobby or occupation pursued outside of a person's regular work (*see* American Heritage Dictionary 124 [4th ed 2002]; Webster's Third New International Dictionary 151 [2002]; *see also Owen v R.J.S. Safety Equip.*, 169 AD2d 150, 155 [1991], *affd* 79 NY2d 967 [1992]). While avocation is also defined as a person's regular employment (*see* American Heritage Dictionary 124; Webster's Third New International Dictionary 151), we cannot conclude that the term "avocational" relationship under risk factor 7 encompasses that lesser-known definition. In the event that it did, there would be no need for the Risk Assessment Guidelines to reference a "professional" relationship because all avocational relationships would encompass professional relationships.

Thus, we conclude that defendant should be assessed zero points under risk factor 7, thereby reducing his score to 100 points and rendering him a presumptive level two risk. We would therefore modify the order by determining that defendant is a level two risk. Present—Scudder, P.J., Martoche, Centra, Fahey and Green, JJ.