# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

**223**

**KA 11-02001**

PRESENT: SCUDDER, P.J., SMITH, FAHEY, CARNI, AND SCONIERS, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                          MEMORANDUM AND ORDER

JAMES RIVERSO, DEFENDANT-APPELLANT.

---

ZIMMER LAW OFFICE, PLLC, SYRACUSE (KIMBERLY M. ZIMMER OF COUNSEL), AND MCGRAW LAW OFFICE, FOR DEFENDANT-APPELLANT.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (VICTORIA M. WHITE OF COUNSEL), FOR RESPONDENT.

---

Appeal from an order of the Supreme Court, Onondaga County (John J. Brunetti, A.J.), entered January 5, 2011. The order determined that defendant is a level two risk pursuant to the Sex Offender Registration Act.

It is hereby ORDERED that the order so appealed from is affirmed without costs.

Memorandum: Defendant appeals from an order determining that he is a level two risk pursuant to the Sex Offender Registration Act ([SORA] Correction Law § 168 *et seq.*). Defendant was convicted of three counts of disseminating indecent material to minors in the first degree (Penal Law § 235.22), in connection with sexually explicit text messages that he transmitted to three 16-year-old girls who played on a soccer team that he coached. We reject defendant's contention that Supreme Court erred in assessing 20 points against him under risk factor 7, for his relationship with the victims. Pursuant to the Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, 20 points are assessed "if the offender's crime[s] . . . arose in the context of a professional or avocational relationship between the offender and the victim[s] and was an abuse of such relationship[s]. Each of [those] situations is one in which there is a heightened concern for public safety and need for community notification" (Risk Assessment Guidelines and Commentary, at 12 [2006]). "[A]vocational relationship" (*id.*) "is not defined in the risk assessment guidelines, but 'avocation' customarily refers to a hobby or occupation pursued outside of a person's regular work" (*People v Carlton*, 78 AD3d 1654, 1657 [Martoche and Centra, JJ., dissenting], *lv denied* 16 NY3d 782), and we conclude that a soccer league coach falls within the risk assessment guidelines. Although we note that defendant was employed as a college soccer coach, his criminal acts were not related to his employment. In any event, reducing defendant's score on the risk

assessment instrument (RAI) by the 20 points assessed against defendant under risk factor 7 does not alter his presumptive risk level.

We conclude that the court properly determined that the People proved by clear and convincing evidence that defendant has a moderate, rather than a low, risk of reoffending (*see* Correction Law § 168-*l* [6] [b]; § 168-n [3]). We further conclude that the court did not improvidently exercise its discretion in denying defendant's request for a downward departure to a level one risk based upon expert testimony that he "successfully" completed a course of sex offender treatment and that his risk of reoffending is "low." It is well established that "the [risk] level suggested by the RAI is merely presumptive and a SORA court possesses the discretion to impose a lower or higher risk level if it concludes that the factors in the RAI do not result in an appropriate designation" (*People v Mingo*, 12 NY3d 563, 568 n 2). We reject defendant's contention that his successful completion of a treatment program is a mitigating factor not otherwise taken into account by the RAI, inasmuch as the RAI considers whether a defendant has accepted responsibility for his or her sexual misconduct by assessing points for the failure to participate in treatment and, here, defendant has received the benefit of zero points for that factor (*see People v Douglas*, 18 AD3d 967, 968, *lv denied* 5 NY3d 710). In any event, the evidence presented at the SORA hearing established that defendant transmitted sexually explicit text messages to at least three girls whom he coached on the soccer team; that he had sexual contact with two of those girls in his vehicle; and that he attempted to engage in sexual activity with two of those girls at a hotel while attending out-of-town tournaments. Furthermore, we note that, although defendant's expert testified that his risk of reoffending was reduced by up to 40% because defendant successfully completed sex offender treatment, defendant nevertheless has a significant risk of reoffending. We therefore conclude that a downward departure is not warranted (*cf. People v Brewer*, 63 AD3d 1604, 1605; *People v Weatherley*, 41 AD3d 1238, 1238-1239; *People v Smith*, 30 AD3d 1070, 1071).

All concur except SCONIERS, J., who dissents and votes to modify in accordance with the following Memorandum: I respectfully dissent because I conclude that Supreme Court improvidently exercised its discretion in determining that defendant is a level two risk pursuant to the Sex Offender Registration Act ([SORA] Correction Law § 168 *et seq.*). In my view, we should " 'substitute [our] own discretion even in the absence of an abuse' " of discretion by the court, and I therefore would modify the order by granting defendant's request for a downward reduction from a level two risk to a level one risk under SORA (*People v Goossens*, 75 AD3d 1171, 1171; *see People v Santiago*, 20 AD3d 885, 885-886). While defendant's presumptive risk level under the risk assessment instrument was properly determined to be a level two risk, I conclude "based on the record before [this Court] that there are . . . mitigating factor[s] of a kind or to a degree[] not otherwise adequately taken into account" by the Risk Assessment Guidelines and Commentary (*Santiago*, 20 AD3d at 886 [internal quotation marks omitted]; *see People v Kearns*, 68 AD3d 1713, 1714; Sex

Offender Registration Act:  Risk Assessment Guidelines and Commentary, at 4 [2006]).

The evidence at the SORA hearing included expert testimony from a clinical psychologist who had provided numerous sessions of sex offender treatment to defendant and who had administered multiple psychological tests in evaluating defendant.  Based on the expert's extensive treatment and evaluation of defendant, she opined within a reasonable degree of psychological certainty that defendant posed a low risk of reoffending.  Another psychologist provided expert testimony regarding his meetings with defendant for the purpose of conducting a clinical interview and sexual assessment of defendant.  Based on that assessment, he opined that defendant represented a low risk to reoffend.  Moreover, "[t]here was no allegation or evidence of forcible compulsion" by defendant (*People v Brewer*, 63 AD3d 1604, 1605).  Considering the foregoing and the record in its entirety, it is apparent that "defendant's response to [sex offender] treatment was exceptional" (*People v Martinez*, 92 AD3d 930, 931) and that, as a discretionary matter, he was entitled to a downward departure from his presumptive risk level.

Entered:  June 15, 2012                          Frances E. Cafarell
                                                 Clerk of the Court