OPINION OF THE COURT
Sheryl L. Parker, J.
The defendant was charged by a felony complaint with rape in the second degree (Penal Law § 130.30) and endangering the welfare of a child (Penal Law § 260.10 [1]). Pursuant to a plea bargain, the defendant pleaded guilty to one count of attempted rape in the third degree (Penal Law §§ 110.00, 130.25) and was sentenced to six months in jail. As required by the Sex Offender Registration Act (Correction Law art 6-C), the Board of Examiners of Sex Offenders submitted a risk assessment instrument finding that the defendant was at level 2 or at a moderate risk of reoffending. The defendant challenges that finding.
BACKGROUND
In the felony complaint, a detective who signed the document alleged that he was informed by the 12-year-old complainant, inter alia, that the 39-year-old defendant had sexual intercourse with her between April 1 and April 15, 1997, laying on top of her in her bed and holding her down with his body. Additionally, he told her that if she told anyone what he had done, he would kill her. The complaint also alleged that on several occasions ending in mid-April 1997, he sexually abused the complainant by repeatedly placing his finger in her vagina and on her breasts.
On August 12, 1997, the defendant pleaded guilty to the reduced charge of attempted rape in the third degree (Penal Law §§ 110.00, 130.25), an A misdemeanor, and allocuted to one incident of sexual intercourse with the complainant. There was no provision in the plea agreement that the defendant submit to any treatment or therapy. Prior to sentence, he was interviewed by a representative of the Department of Probation, during which interview he admitted to having “sex with his 12 year old niece * * * He stated that he feels terrible about what he has done. He further stated that it should never have happened.”
*494 In the evaluative summary of the probation report, the probation officer assigned concluded: “He superficially verbalized remorse for his behavior. It appears that the defendant was self absorbed in fulfilling his own needs. He had no regard for the devastating effect that his behavior would have on the victim.” The report does not set forth the basis for these conclusions which are inconsistent with the statements of the defendant.
Efforts of the Probation Department to interview the complainant proved to be unsuccessful. The Assistant District Attorney assigned to the case was contacted, however, and advised that the complainant was in foster care and her adjustment is “fair”.
On October 30, 1997, as required by the Sex Offender Registration Act (Correction Law art 6-C), the Board of Examiners submitted a risk assessment instrument which found that the defendant was a level 2 or moderate risk of reoffending.
THE SEX OFFENDER REGISTRATION ACT
“The Sex Offender Registration Act * * * requires the Board of Examiners of Sex Offenders * * * ‘to develop guidelines and procedures to assess the risk of a repeat offense by [a] sex offender and the threat posed to public safety.’ Correction Law § 168-Z (5). There are three levels of risk depending upon the offender’s danger to the community: level 1 (low risk), level 2 (moderate risk), and level 3 (high risk). The offender’s risk level determines the amount of information that can be disseminated about him to the public under the Act’s notification procedures.” (Risk Assessment Guidelines and Commentary, at 1 [1997 ed].)
All sex offenders are required to register upon conviction of the sex offenses set forth in Correction Law § 168-a (2) and (3). It is the responsibility of the court to determine the duration of registration and level of notification after considering certain guidelines set forth in the statute and which are to be followed by the Board of Examiners. (Correction Law § 168-d [3].)
With regard to the duration of registration, every sex offender must register annually for 10 years. If a court determines that the offender is a predatory sex offender, the 10-year period is a minimum and the offender must verify registration quarterly. There is no evidence nor is it contended that the offender in this case is a predatory sex offender. Accordingly, the duration of the registration in this case is the mandatory 10-year time period which attaches automatically upon conviction. *495 With regard to the level of notification, a level 1 designation (a risk of a repeat offense is low) attaches upon conviction even though the court is still required to review the recommendation of the Board of Examiners and make a decision. A level 1 designation means that appropriate law enforcement agencies are notified as to the address and particulars of the defendant. (Correction Law § 168-Z [6] [a].)
A level 2 designation (a risk of repeat offense is moderate) is determined by the court after reviewing the recommendations of the Board, any victim’s statement and any materials submitted by the offender and after the offender has had an opportunity to appear and to be heard. (Correction Law § 168-n [2], [3].) When an offender is designated level 2, the appropriate law enforcement agencies may disclose relevant information regarding the offender (except his address shall be by zip code rather than actual residence) including a recent photograph to any entity having a vulnerable population related to the offense committed, which entity may, in turn, disclose such information if they so choose.
A level 3 designation relates to a sexually violent predator and is not applicable in this case.
The recommendation by the Board is set forth in a risk assessment instrument. This document is a checklist form in which the risk of repetitive behavior is determined by considering four groups of characteristics, viz., current offense, criminal history, postoffense behavior and release environment. Points are assessed for characteristics within each group. It was created pursuant to the Board’s statutory mandate to create an objective assessment instrument that would provide a presumptive risk level for a sex offender. (Risk Assessment Guidelines and Commentary, at 3.) For example, if after an objective determination, an offender scores 75, it is presumed that there is a moderate risk of repetitive behavior. (The point spreads for the various risk levels are: 0-70, low risk; 75-105, moderate risk; 110-300, high risk.)
THE DEFENDANT’S RISK ASSESSMENT
In the defendant’s case the total point assessment determined by the Board of Examiners was 100. The points were assessed as follows:
With respect to the current offense, the use of forcible compulsion mandates a score of 10, the fact of sexual intercourse a score of 25, a continuing course of sexual conduct a score of 20 and the age of the victim a score of 20, for a total of 75 points.
*496 The defendant received no points for the category criminal history.
For postoffense behavior, he received 10 points for not accepting responsibility for his actions.
Finally for release environment, he received 15 points for being released without supervision.
Attached to the risk assessment instrument is a case summary which states that “according to reports the offender laid on top of the victim and held her down with his body weight and then raped her. On other occasions he put his fingers into her vagina and touched her breasts. He threatened that if she told anyone what he had done he would kill her.” This is the same language that appears in the felony complaint. The case summary also states the conclusions set forth in the probation report that the defendant only superficially verbalized remorse.
The defendant has moved for a hearing to challenge the level of risk as determined by the Board of Examiners. This hearing (Megan’s Law hearing) was conducted on June 12, 1998, at which the People presented in support of their position the felony complaint (above described), a supporting deposition signed by the complainant which states that the information contained in the felony complaint is true, an affirmation by Assistant District Attorney Catherine Kane stating that the complainant told her that the allegations in the felony complaint are true, a certified copy of the complainant’s medical records from Jamaica Hospital Medical Center which recites treatment the complainant received and statements she made to hospital personnel on May 9, 1997, a supplementary addendum of the Department of Probation which in substance repeated the conclusions set forth in the original probation report and a Police Department complaint follow-up dated May 14, 1997 which recited the crime. (The court did not consider the information contained in the complaint follow-up in light of the rank hearsay nature of this document.)
The defendant submitted the complainant’s diary which indicated sexual activity with other individuals prior to her incident with the defendant. He contends that the risk assessment is improper in three respects:
(a) The assessment of 20 points for a continuing course of conduct is improper because he only pleaded guilty to one incident and her allegations in the felony complaint are incredible;
(b) The assessment of 10 points for not accepting responsibility for his actions is based, not on fact, but unsupported conclu *497 sions by the probation officer and adopted by the Board without any investigation; and
(c) The assessment of 15 points for being released without supervision, since the original plea bargain offered by the People contained no provision for future treatment or supervision.
THE LAW
The Court of Appeals has recently held that Megan’s Law determinations are not criminal in nature but similar to any other regulatory disability which is triggered upon conviction (such as the loss of the right to vote upon a felony conviction) and therefore there is no appeal from an adverse determination pursuant to the provisions of the Criminal Procedure Law (People v Stevens, 91 NY2d 270 [1998]).
Accordingly, it would appear that a Megan’s Law determination and any hearing held in connection with such a determination is “civil” in nature.
THE STANDARD OF PROOF
Due process is flexible and calls for such procedural protections as the particular situation demands (Morrissey v Brewer, 408 US 471 [1972]). To determine the nature of the due process required in this case, Mathews v Eldridge (424 US 319 [1976]) has set forth three distinct factors which must be considered:
(1) The private interest that will be affected by the official action;
(2) The risk of an erroneous deprivation of such interest through the procedures used; and
(3) The government’s interest supporting the challenged procedure.
The first and third Mathews factors, in the scheme of things, come out comparatively equal. The defendant’s interest is in the nature of a “liberty” interest in that his identity, under level 2, must be disclosed to vulnerable institutions who in turn disclose this information to whom they see fit for a period of 10 years.
The government’s interest in ensuring that the defendant be designated at the appropriate risk level is to protect the public from the “danger of recidivism posed by sex offenders,” and to assist “the criminal justice system to identify, investigate, apprehend and prosecute sex offenders.” (L 1995, ch 192, § 1, *498 reprinted in McKinney’s Cons Laws of NY, Book 10B, Correction Law § 168, Historical and Statutory Notes, 1998 Pocket Part, at 82.)
The second factor turns upon whether the standard of proof at a Megan’s Law hearing be either preponderance of the evidence or the higher standard of clear and convincing evidence.
The purpose of a standard of proof is to instruct a fact finder concerning the degree of confidence our society thinks the fact finder should have in the correctness of factual conclusions for a particular type of adjudication (In re Winship, 397 US 358). It allocates the risk of error between litigants and the relative importance attached to the ultimate decision of the fact finder. (See, Addington v Texas, 441 US 418.)
Comparing a civil lawsuit between two private citizens for money against a criminal proceeding, society has little interest in the outcome of the civil lawsuit. Therefore, preponderance of the evidence is the appropriate standard; that is, the risk of error between the litigants is roughly equal. In a criminal case, society has a greater interest in the outcome, namely, that the innocent shall not be convicted and thus, the higher standard of proof is required. (See, Addington v Texas, supra.)
Clear and convincing is somewhere between preponderance of the evidence and proof beyond a reasonable doubt (Home Ins. v Karantonis, 156 AD2d 844; Solomon v State of New York, 146 AD2d 439). In civil cases, it is the standard to be followed where denial of personal or liberty rights is at issue (see, Matter of Capoccia, 59 NY2d 549), or when particularly important interests are at stake (Matter of Storar, 52 NY2d 363), for example, to establish claims of fraud, terminate parental rights, terminate life-sustaining equipment, to commit to a mental institution, et al. (Prince, Richardson on Evidence § 3-205 [Farrell 11th ed]). Clear and convincing evidence is the appropriate standard of proof when the individual interest at stake is particularly important and more substantial than a mere loss of money (Addington v Texas, supra). The stigma of having your identity as a convicted sex offender disclosed to anyone a vulnerable institution deems necessary for a 10-year period is particularly important and “more substantial than [a] mere loss of money” (Addington v Texas, supra, at 424). Therefore, the standard of proof at the hearing is clear and convincing evidence.
This finding is consistent with the Board of Examiners’ own Guidelines: “Completing the risk assessment instrument will often require the Board or court to review the case file to *499 determine what occurred. Points should not be assessed for a factor — e.g., the use of a dangerous instrument — unless there is clear and convincing evidence of the existence of that factor. This evidence can be derived from the sex offender’s admissions; the victim’s statements; the evaluative reports of the supervising probation officer, parole officer or corrections counselor; or from any other reliable source. Notably, the Board is not limited to the crime of conviction but considers the above in determining an offender’s risk level. Likewise, the fact that an offender was arrested or indicted for an offense is not, by itself, evidence that the offense occurred. By contrast, the fact that the offender was not indicted for an offense may be strong evidence that the offense did not occur. For example, where a defendant is indicted for rape in the first degree on the theory that his victim is less than 11 * * * but not on the theory that he used forcible compulsion * * * the Board or court should be reluctant to conclude that the offender’s conduct involved forcible compulsion.” (Risk Assessment Guidelines and Commentary, at 5.)
THE BURDEN OF PROOF
The term “burden of proof’ is used in two senses. One sense is the need for persuading the fact finder that, on all of the evidence, the proposition possesses the required degree of probability, be that degree preponderance of the evidence, clear and convincing evidence or beyond a reasonable doubt. This sense of burden of proof has been previously discussed.
The other sense of “burden of proof’ requires the production of evidence sufficient to satisfy the court that the proposition is of such probability that the fact finder can reasonably make a finding for the party producing it. Satisfying this burden establishes a prima facie case. (See, Fisch, New York Evidence § 1086 [2d ed].) It is in this latter sense that the issue of who must shoulder the burden in a Megan’s Law hearing arises.
The determination of where the burden of proof rests depends on the facts to be proved, and in each instance upon considerations of fairness and convenience. (Fisch, op. cit., § 1087.) Since the facts to be proved in this hearing are largely under the control of the government (they have access to the complainant, the Department of Probation, police reports, etc.) and since it is the government which is attempting to intrude upon the defendant’s privacy interests, fairness dictates that they carry the burden of proof.
*500 THE TYPE OF HEARING
In People v Stevens (supra, at 279) the Court of Appeals held: “Accordingly, we also defer passing on or sorting out the ‘true nature of the proceeding and the relief sought’ that may definitively implicate whether a court making postsentence risk level assessments is acting qua court or as a distinct quasi regulatory entity and whether those determinations are subject to typical or special judicial review as a civil or criminal proceeding that may generate some discrete, authorized appellate review”.
What is clear is that the proceeding is not a criminal proceeding (People v Stevens, supra), and the purpose of the Sex Offender Registration Act is predominantly regulatory. (Mem of Senate in Support, at 6, Bill Jacket, L 1995, ch 192.) Accordingly, the hearing is not the equivalent of a full adversarial criminal trial and is not without flexibility (Matter of Edwin L., 88 NY2d 593; Morrissey v Brewer, supra).
In determining the minimal due process requirements at a parole revocation hearing, Morrissey (supra) held that in addition to being given notice and an opportunity to be heard, a defendant was entitled to confront and examine witnesses unless the Hearing Officer specifically found good cause for not allowing such confrontation, in which case hearsay would be admissible. Such hearings should be flexible enough to receive evidence (letters, affidavits and other material) that would not be admissible at a criminal trial (Morrissey v Brewer, supra; Gagnon v Scarpelli, 411 US 778).
In determining whether there is sufficient good cause for the admission of hearsay, a court should consider the favored status of the right to confrontation, the nature of the evidence at issue (is it cumulative, inherently rehable, etc.), the potential utility of cross-examination and the burden upon the State if required to produce the declarant; and make a specific finding of good cause on the record (People ex rel. McGee v Walters, 62 NY2d 317).
In this case, the court finds that the felony complaint together with the supporting deposition of the complainant sufficiently establish the facts alleged. With regard to the sexual intercourse allegation, the testimony of the complainant would merely repeat the facts to which the defendant allocuted when he pleaded guilty and is therefore cumulative. Cross-examination as to those facts would be disingenuous to say the least in light of the defendant’s admission to the crime in court *501 and to an interviewing probation officer. Additionally, requiring a complainant of this young age who is presently undergoing some form of therapy to testify to the event would be unduly burdensome. In light of the complainant’s psychological state, there is sufficient cause for the People to use the complainant’s supporting deposition attesting to the truth of the facts alleged to establish the fact that there were multiple acts of sexual misconduct. The defendant was entitled to be heard and presented no evidence to contradict or raise into question the allegation in the felony complaint as to the multiple counts of sexual abuse. The fact that he did not plead guilty to committing such acts does not mean that they did not occur. Accordingly, the court finds that the assessment of 20 points for a “course of conduct” is appropriate.
The defendant’s contention that the 10-point assessment for “failing to accept responsibility for his actions” is based on unsupported conclusions is correct. In light of the probation report’s contradictions, the defendant should have had the right of confrontation. This was particularly necessary since it appears that the Board of Examiners specifically relied upon the probation report in making its assessment. Since the People failed to show any factual basis for the conclusions set forth in the probation report, the court will not consider the 10 points assessed by the Board of Examiners,
Finally, the defense asserts that the assessment of 15 points for being released without supervision is improper since the original plea bargain offered by the People contained no provision for future treatment or supervision. This contention fails to focus on the issue before the court. The issue is not whether the plea bargain required the defendant to be treated or supervised but rather the degree of risk of this defendant repeating the conduct for which he pleaded guilty. Persons who are treated and supervised have less risk of repetitive conduct than persons who are not treated. This is independent of whether the People required or did not require treatment as part of the plea bargain. Accordingly, the court finds that the 15 points assessed for this risk factor are appropriate.
Taking into consideration that the defendant’s rating is now 90 points as well as all of the facts and circumstances of this case, the court finds that the level of notification for this defendant is level 2.