People v Wiggins (2004 NY Slip Op 50057(U))

[*1]

People v Wiggins

2004 NY Slip Op 50057(U)

Decided on February 13, 2004

Supreme Court, Bronx County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 13, 2004

Supreme Court, Bronx County
 THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff,
against
MARCUS WIGGINS, Defendant.
Indictment No. 2386/2000

For the People of the State of New York
ROBERT T. JOHNSON, District Attorney
By: SARAH J. SCHALL, ESQ., Assistant District Attorney
For Marcus Wiggins
DAVID C. CLARKE, ESQ.
Legal Aid Society
By: CAROLINE McGRATH, ESQ.

Dominic R. Massaro, J.
Following a plea of guilty to Attempted Sexual Abuse in the First Degree (Penal Law § 110/130.65), pursuant to the Sexual Offender Registration Act (hereinafter "SORA"), the Board of Examiners of Sex Offenders (hereinafter "the Board") recommends designating Marcus Wiggins as a Risk Level 2 Sexually Violent Offender upon his release from custody. Defendant argues at a risk assessment hearing that this designation is incorrect, that it should actually be a lower Risk Level 1. Specifically, he contends that the Board erred in adding 25 points for his engaging in sexual intercourse, deviate sexual intercourse, or aggravated sexual abuse with the victim. Defendant contends that because he was convicted of an attempt, he is not guilty of any of the abovementioned overt acts. Therefore, he should have received zero points under the factor "sexual contact with victim," which would bring his total score to 70, rather than the 95 presumptive points assigned him. By looking solely to the charge to which he pled, however, Defendant wrongly concludes.
Factual Setting
On May 4, 2000, Mr. Wiggins was arrested for acting in concert with John Scott in allegedly committing the crimes of Kidnaping in the First Degree (Penal Law § 135.25 [1]), Rape in the First Degree (Penal Law § 130.35 [1]), Sodomy in the First Degree (Penal Law § 130.50 [1]), and Unlawful Imprisonment in the First Degree (Penal Law § 135.10), against one Sabrina [FN1] on May 3, 2000, at approximately 11:00 p.m., in the vicinity of East 233rd Street and White Plains Road in Bronx County. Defendant and co-defendant Scott were subsequently indicted for [*2]all of the above charges. In the felony complaint, it was alleged that Defendant and Scott detained Sabrina in a car and refused to let her leave when she requested to do so. Further, when she attempted to get out, she was pulled back inside and her mouth covered when she tried to scream for help. Defendant and Scott then held Sabrina down while Defendant inserted his penis into her vagina and Scott inserted his penis into her mouth, both without her consent. At the time of his arrest, when told that he was being charged with rape, Defendant responded, "I kind of had that feeling." He was subsequently identified by both Sabrina and an eyewitness in separate corporeal lineups.
In the course of the Grand Jury presentation, it was established that Sabrina was with her friend Rosalie. Rosalie knew Defendant and talked to him while Sabrina was standing close by. Sabrina and Rosalie got into the back seat of the vehicle. When Rosalie got out to purchase some cigarettes or marijuana, Defendant drove off with Sabrina. Sabrina called to Rosalie for help. However, Scott pulled her back into the car. Defendant proceeded to drive to a parking lot. He then got into the back seat, grabbed Sabrina's thigh and demanded that she place his penis into her mouth. Thereafter, Defendant removed Sabrina's pants, held her hands down, and engaged in sexual intercourse with her against her will. Scott then inserted his penis into Sabrina's mouth and masturbated into her mouth while Defendant held her hands down as she was repeatedly shouting, "No." Scott then struck Sabrina in the mouth. Afterwards, Sabrina was driven to within one block of her home and forcibly thrown out of the car.
DNA tests performed on the victim and Defendant revealed that his semen and that of another male were found on a vaginal swab of the victim as well as on her panties.
On February 26, 2001, Defendant pled guilty to the lesser included offense of Attempted Sexual Abuse in the First Degree. He received a sentence of an indeterminate term of imprisonment of from one and one-third to four years. In the course of his allocution, the People stated that if this matter had gone to trial, "the People would have proven that on May 3rd of the year 2000, this defendant did, by forcible compulsion, force the complainant in the case, Sabrina [], to have sexual intercourse with him" (Tr. at 22-23). Defendant then admitted under oath, "I had sex with her without her consent" (Tr. at 23).
In preparation for his sentencing, Defendant was interviewed by the Department of Probation for a Pre-sentence Report. The report noted that, "Defendant admitted his guilt. Showing no remorse. The Defendant stated that he had sex with his ex-girlfriend" (Pre-sentence Report, p. 2). It further noted that this crime "is evidence of the Defendant's sexually deviant and aggressive behavior" (Pre-sentence Report, p. 3); and that Defendant "appears in need of a counseling program to determine the reason for his actions" (Pre-sentence Report, p. 4). Defendant also acknowledged that he has been using alcohol since age nineteen, however, he claimed that he does not abuse it. 
On October 23, 2003, the Board submitted a Risk Assessment Instrument. It recommends designating Defendant as a Sexually Violent Offender based on his conviction for Attempted Sexual Abuse in the First Degree. It also recommends classifying Defendant as a Risk Level 2 based on an assessed score of 95. Specifically, the Board assessed: 10 points for use of forcible compulsion; 25 points for sexual intercourse, deviate sexual intercourse or aggravated sexual abuse with the victim; 20 points for being either a stranger to the victim or having a relationship established for the purpose of victimizing or a professional relationship; 5 [*3]points for a criminal history with no sex crimes or felonies; 15 points for a history of drug or alcohol abuse; and 20 points for unsatisfactory conduct while confined or supervised including sexual misconduct.
The Board then compiled a Case Summary "based upon a review of the inmate's file which includes but is not limited to the pre-sentence investigation, prior criminal history and post-offense behavior." This summary stated, in pertinent part, that:
While incarcerated, [Defendant] completed a sex offender counseling program. His final evaluation indicates that he accepted responsibility for his actions and demonstrated remorse and empathy. [Defendant,] who admitted to abusing alcohol and to drinking on the night of the rape, did complete a substance abuse program. His disciplinary history contains a sex offense wherein during a visit with his wife and mother, [Defendant] was observed with his hand "in between his wife's legs, outside of clothing, rubbing her crotch vigorously." Her also was placed in Protective Custody in May 2003 after being slashed on his face for gang activity, i.e., "unauthorized organization activity."
(Risk Assessment Instrument, p. 5).
Arguments of Counsel
Relying primarily on People v. Madlin, 302 A.D.2d 751 (3rd Dept. 2003), Defendant argues that because he was convicted of Attempted Sexual Abuse in the First Degree, there was no sexual contact, and, therefore, he should receive zero points in that category "even if it was his intent to have forced sexual intercourse with the victim" (Defense Memorandum, p. 2). It is contended that this is because SORA specifically rejected a mens rea based approach "in favor of a more workable guideline that focuses upon the offender's conduct" (Risk Assessment Guidelines and Commentary, p. 10 [November 1997 ed.]) (hereinafter the "Guidelines").
In response, the People contend that the facts alleged make out a completed rape and Defendant's own statements and DNA testing confirm that he had sexual intercourse with the victim. The People then claim that, pursuant to People v. Saleemi, 186 Misc.2d 177 (Sup. Ct. Queens Cty. 2000), People v. Jimenez 178 Misc.2d 319 (Sup. Ct. Kings Cty. 1998), People v. Tucker, 177 Misc.2d 418 (Cty. Ct. Nassau Cty. 1998), People v. Richardson, N.Y.L.J. June 22, 1998 (Cty. Ct. Nassau Cty. 1998), and Matter of Youngs v. Division of Probation and Correction Alternatives, 175 Misc.2d 51 (Cty. Ct. Yates Cty. 1997), this Court is not limited to the single charge to which Defendant pled guilty, but rather, may rely on the victim's sworn testimony, Defendant's plea, Grand Jury testimony, Defendant's statements and DNA evidence.
Statutory and Decisional History
In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program (42 U.S.C. § 14071-73), commonly known as "Megan's Law."[FN2] This Act called for the Attorney General to establish guidelines that required each state [*4]to establish a program for persons convicted of a sexually violent offense to register with an appropriate state agency. As a result of this Federal mandate, in 1995, the New York State Legislature enacted Article 6-C of the Correction Law: The Sexual Offender Registration Act (SORA). See Correct. Law § 168 - 168(w).
Pursuant to SORA, the Board developed guidelines and procedures to assess the risk of a repeat offense by a sex offender and the threat that person posed to the public safety. See Correct Law § 168-l (5). Based on these factors, the Board recommends to the sentencing court whether a defendant warrants the designation as a sexual predator, sexually violent offender, or predicate sex offender as defined in Correct. Law § 168-a (7), as well as which of three levels of notification the defendant should be assigned based upon "the risk of a repeat offense." Correct. Law § 168-l (5). "The offender's risk level determines the amount of information that can be disseminated about him to the public under the Act's notification procedures. . . [and] the threat posed by a sex offender depends upon two factors: (i) the offender's likelihood of reoffense and (ii) the harm that would be inflicted if he did reoffend" (Guidelines, pp. 1-2). The two risk assessment levels that are pertinent to the case at bar are:

(a) If the risk of repeat offense is low, a level one designation shall be given to such sex offender. In such case the law enforcement agency or agencies having jurisdiction and the law enforcement agency or agencies having had jurisdiction at the time of his or her conviction shall be notified pursuant to this article. (b) If the risk of repeat offense is moderate, a level two designation shall be given to such sex offender. In such case the law enforcement agency or agencies having jurisdiction and the law enforcement agency or agencies that have had jurisdiction at the time of his or her conviction shall be notified and may disseminate relevant information which shall include a photograph and description of the offender and which may include the name of the sex offender, approximate address based on sex offender's zip code, background information including the offender's crime of conviction, modus of operation, type of victim targeted, the name and address of any institution of higher education at which the sex offender is enrolled, attends, is employed or resides and the description of special conditions imposed on the offender to any entity with vulnerable populations related to the nature of the offense committed by such sex offender. Any entity receiving information on a sex offender may disclose or further disseminate such information at its discretion.
Correct. Law § 168-l (6).
[*5]
In determining the risk level, the Board has promulgated fifteen factors that are divided into four categories. These guidelines are based on an individualized approach that is mandated by Federal statute, see 42 U.S.C. § 14071 (a) (s), and they are designed to "eschew per se rules [so] that risk should be assessed on the basis of a review of all pertinent factors" (Guidelines, pp. 2-3). Under each factor, "the court should look to the most serious wrongdoing in each category" (Guidelines, p. 6), and only one of the options is chosen if any are applicable. If the aggregate score from all of these factors is 70 points or less, the offender is presumptively a risk level one. If it is more than 70 but less than 110, he is presumptively a risk level two. 
The relevant factors within each category are now reviewed:
1.Current Offense(s). To "be completed on the basis of all of the crimes that were part of the instant disposition" (Guidelines, p. 5), if the offender used forcible compulsion, as defined in Penal Law § 130.00 (8), 10 points are assigned. "Research on sex offenders shows that the offender's use of violence is positively correlated with his likelihood of reoffending . . . [and is] also a factor strongly associated with the offender's dangerousness to the community" (Guidelines, p. 7).
Respecting sexual contact with the victim, the issue specifically contested herein, if the offender engaged in sexual intercourse or deviate sexual intercourse (as occurred here), 25 points are assigned. The Board shall "apply traditional principles of accessorial liability. This means that if an offender held the victim down while his co-defendant had sexual intercourse with her (likewise occurring here), the offender should receive 25 points for sexual contact with the victim" (Guidelines, p. 7).
If the crime was directed at a stranger, 20 points are assigned. This situation "is one in which there is a heightened concern for public safety and need for community notification" (Guidelines, pp. 12-13). A stranger is considered "anyone who is not an actual acquaintance of the victim [and] can include a person living in the same apartment building or the relationship . . . is limited to their passing in the hallway or sharing an elevator" (Guidelines, pp. 12-13).
2. Criminal History. If the offender has a prior criminal history but no convictions or adjudications for a sex crime or felony, 5 points are assigned. In addition, 15 points are assigned if the offender has a history of drug or alcohol abuse because "alcohol and drug abuse are highly associated with sex offending . . . [and although] use of these substances does not cause deviate behavior, it serves as an disinhibitor and therefore is a precursor to offending" (Guidelines, p. 15). This factor focuses on substance abuse history or drug and alcohol abuse at the time of the offense and does not include social drinking. However, an "offender need not be abusing alcohol or drugs at the time of the offense to receive points in this category" (Guidelines, p. 15).
3. Post-Offense Behavior. This involves "an assessment of [the defendant's] conduct while in custody" (Guidelines, p. 6). If the offender's adjustment to confinement or supervision has been unsatisfactory and has included sexual misconduct, 20 points are assigned. Not surprisingly, misconduct in prison "bodes ill for [an offender's] return to the streets" (Guidelines, p. 16).
4. Release Environment. No points were assigned under this factor, making for a total risk score of 95 presumptive points.
Notwithstanding, this presumed determination by the Board is merely a recommendation. [*6]The sentencing court is charged with making the actual determination regarding whether a defendant is a Sexual Predator, Sexually Violent Offender or Predicate Sex Offender, and if he is to be designated as a Risk Level 1, 2 or 3. See People v. Stevens, 91 N.Y.2d 270 (1998).
The sentencing court is to use the same factors as the Board in making its determination. See Stevens, supra; People v. Santiago, 2001 N.Y. Slip Op. 40450, 2001 WL 1657275 (Sup. Ct. Bronx Cty. October 5, 2001); People v. Ayten, 172 Misc.2d 571, 572 (Sup. Ct. Queens Cty. 1997). However, the ability of the sentencing court to depart from the recommendation is:

premised on a recognition that an objective instrument, no matter how well designed, will not fully capture the nuances of every case. . . . Of course . . . [t]he expectation is that the instrument will result in the proper classification in most cases so that departures will be the exception not the rule. . . . [Therefore,] the court may not depart from the presumptive risk level unless it concludes that there exists an aggravating or mitigating factor of a kind, or to a degree, not otherwise adequately taken into account by the guidelines.
(Guidelines, p. 4). See also Matter of Vandover v. Czajka, 276 A.D.2d 945 (3rd Dept. 2000); Matter of O'Brien v. State of New York Division of Probation and Correctional Services, 263 A.D.2d 804, 805-06 (3rd Dept. 1999), lv. denied, 94 N.Y.2d 758 (1999); Matter of New York State Board of Examiner of Sex Offenders v. Ransom, 249 A.D.2d 891, 891-92 (4th Dept. 1998) ("The court . . . may depart from that recommendation and determine the sex offender's risk level based upon the facts and circumstances that appear in the record. The Board, therefore, serves only in an advisory capacity that is similar to the role served by a probation department in submitting a sentencing recommendation."); Matter of Nadel, 188 Misc.2d 427, 434 (Sup. Ct. New York Cty. 2001) ("To conclude that this court does not have the power to review the Board's decision would mean that the Legislature provided for the courts to make the simplest of SORA determinations, yet entrusted the much more complicated legal conclusions to an administrative agency free from any judicial review of its decision. The Legislature could not have intended this anomaly to occur."); Jimenez, supra at 323 ("[T]he Legislature did not intend to place upon the criminal courts of this State a burden to act merely as a regulatory body to confirm the determination of the Board. . . . [T]he court must make a de novo determination, giving due consideration to the recommendation of the Board.").
If either the People or the sex offender disagree with the Board's recommendation in the sentencing court, the parties shall be afforded a hearing. See Correct. Law § 168-n (3). In such a hearing, "[t]he sentencing court has wide discretion with regard to the conduct of the hearing and the type and nature of the testimony and evidence to be considered. Formal rules of evidence are inapplicable to this type of proceeding and reliable hearsay evidence may be utilized to support the court's final determination." People v. Salaam, 174 Misc.2d 726, 731 (Sup. Ct. New York Cty. 1997) ). See also People ex rel. Wohlford v. Warden, 184 A.D.2d 232 (2st Dept. 1992); People v. Brasier, 169 Misc.2d 337, 339-40 (Sup. Ct. Bronx Cty. 1996) ("[T]he hearing contemplated by this statute does not litigate guilt or nonguilt but 'is a summary proceeding which does not trigger strict evidentiary rules or all the procedural safeguards available to a [*7]defendant in a criminal action.' . . . The situation herein is more akin to [a] forfeiture [proceeding]."), quoting, People v. Recor, 209 A.D.2d 831 (3rd Dept. 1994), aff'd, 87 N.Y.2d 933 (1996).
At the hearing, the People bear the burden of proving the facts supporting the determination sought by clear and convincing evidence and

[i]n making the determinations the court shall review any victim's statement and any relevant materials and evidence submitted by the sex offender and the district attorney and the recommendation and any materials submitted by the board, and may consider reliable hearsay evidence submitted by either party, provided that it is relevant to the determination. Facts previously proven at trial or elicited at the time of entry of a plea of guilty shall be deemed established by clear and convincing evidence and shall not be religitated.
Correct. Law § 168-n (3). See also People v. David W., 95 N.Y.2d 130 (2000); Stevens, supra; People v. Brooks, 308 A.D.2d 99, 102 (2nd Dept. 2003) (court may rely on "information provided in the defendant's pre-sentence report, information regarding his prior criminal history and information provided by the correctional facility regarding his post-offense behavior, including any disciplinary proceedings brought against him"), lv. denied, N.Y.2d , 2003 WL 22843581 (November 25, 2003); People v. Sturdivant, 307 A.D.2d 382 (3rd Dept. 2003) (court may rely upon grand jury minutes and transcripts of the trial testimony); People v. Mitchell, 300 A.D.2d 377 (2nd Dept. 2002) ("The hearing court properly relied upon its recollection of the plea proceeding, the pre-sentence report, and the case summary of the Board."), lv. denied, 99 N.Y.2d 510 (2003); People v. Wroten, 286 A.D.2d 189, 199 (4th Dept. 2001) ("[T]he signed and sworn supporting affidavit of the . . . victim constituted reliable hearsay and/or a relevant statement of any victim. . . . [T]he court was entitled to consider and rely on such evidence."), lv. denied, 97 N.Y.2d 610 (2002); Guidelines, p. 5 ("The evidence can be derived from the sex offender's admissions; the victim's statements, the evaluative reports of the supervising probation officer, parole office or corrections counsel; or from any other reliable sources. Notably, the Board is not limited to the crime of conviction but considers the above in determining an offender's risk level.").
Discussion
Under SORA, a Sexually Violent Offender is any sex offender convicted of a sexually violent offense, which includes a conviction for Attempted Sexual Abuse in the First Degree. See Correct. Law § 168-a (1), (3)(a), (7)(b). Therefore, Defendant, who has been convicted of this crime, has properly been categorized as a Sexually Violent Offender.
Likewise, "[d]efendant was properly classified as a level-two sex offender." People v. Roland, 292 A.D.2d 271 (1st Dept. 2002), lv. denied, 98 N.Y.2d 614 (2002). This classification "was supported by clear and convincing evidence, based on the facts contained in the Board's Case Summary and Risk Assessment Instrument." People v. Oquendo, 1 A.D.2d 421 (2nd Dept. 2003).
Although the First Department has yet to rule on an analogous case, several court cases are instructive. In People v. Victor R., 186 Misc.2d 28 (Sup. Ct. Bronx Cty. 2000), the defendant [*8]was initially charged with several sex offenses against multiple victims. He later pled guilty to one count of attempted second degree sodomy against only one victim. At his risk assessment hearing, the defendant challenged the use of the Pre-Sentence Report and Grand Jury minutes. In allowing the use of these items, the court (at 33-35) held:

Grand Jury testimony is undeniably probative, and has historically been admitted in a variety of proceedings, under appropriate circumstances, including at trial where the standard for the admission of such testimony is clearly much greater. . . . [I]n the context of SORA hearings, the use of Grand Jury minutes is amply supported by controlling authority. The statute itself directs that the court "may consider reliable hearsay evidence." (Correction Law § 168-n [3]). . . . Similarly, a felony complaint and the supporting deposition of the complainant, which are likewise not subject to cross-examination, have been found to be reliable and admissible hearsay in SORA hearings. (People v. Sumpter, 177 Misc.2d 492 [Crim. Ct. Queens Cty. 1998]). . . . The role of the court in cases of this type is to weigh the reliability and probative value of the hearsay evidence, and to admit that evidence provided it is established to be reliable. Accordingly, the admission of Grand Jury testimony to establish the conduct surrounding the defendant's conviction is consistent with the explicit provisions of SORA, as well as basic principles of justice. . . . [W]hen no cogent evidence is offered to cast doubt on the Grand Jury testimony, and when all of the attendant evidence and indicia circumstantially support the reliability of that evidence, hearsay evidence in the form of Grand Jury testimony constitutes competent and probative evidence which will support a determination of the risk level posed by the sexual offender under the statute. . . . Defendant has not demonstrated that any factual matter contained in the report of the Department of Probation was misrepresented, nor does defendant present any evidence that the report is otherwise inaccurate or unreliable. The court finds that the probation report is "reliable" hearsay evidence, and was consequently admissible.
The court also noted that where a defendant in his plea has admitted the commission of the crime, "SORA prohibits him from relitigating his guilt . . . as '[f]acts previously proven at trial or elicited at the time of entry of a plea of guilty shall be deemed established by clear and convincing evidence.' (Correction Law § 168-n [3])." Victor R., id. 
Similarly, in Saleemi, supra, the defendant was initially indicted for first-degree rape, second-degree kidnaping, first-degree sexual abuse, second-degree assault, petit larceny and fourth degree weapons possession. He later pled guilty to first-degree sexual abuse. In classifying him as a risk level two, the court assessed points for being armed with a dangerous instrument and engaging in sexual intercourse with the victim. The court relied upon the victim's Grand Jury testimony, defendant's statements to the police and his plea allocution. The court (at [*9]180) held:

In determining the risk factors here, this court is not limited to the single charge of sexual abuse in the first degree to which defendant pleaded guilty. The sworn Grand Jury . . . testimony of the victim . . . and defendant's statement to the police, demonstrate by clear and convincing evidence that defendant . . . possessed a knife and that he did have forcible sexual intercourse with [the victim]. The plea allocution corroborates the victim's prior testimony that defendant forcibly had sexual contact with her. In Youngs, supra, a defendant claimed that he was incorrectly assessed points for forcible compulsion, sexual intercourse and multiple acts of sexual conduct since he was convicted of only one count of statutory rape and acquitted on the other count. However, the court noted that by reviewing the victim impact statement, sworn statements of the victims, and probation report, there was clear and convincing evidence that the defendant did engage in forcible compulsion even though he was not indicted for such an act. Specifically, the court (at 55) held:

At first blush the defendant's arguments concerning this factor are compelling. After all, if the jury had acquitted on both counts, the defendant would not be subject to article 6-C at all, despite the sworn statements by the victim concerning multiple incidents of sexual intercourse. But, since the Risk Assessment Guidelines and Commentary allowed the [Board] to review the record despite the acquittal, this court cannot say that [the Board's] determination to assess points for this factor was arbitrary and capricious or an abuse of discretion.
See also People v. Marinconz, 178 Misc.2d 30, 34 (Sup. Ct. Bronx Cty. 1998) ("neither the Board nor the court is limited solely to the dispositional charge to which the defendant pleaded guilty"); Jimenez, supra at 329 (finding clear and convincing evidence of acts against more than one victim based upon the Grand Jury minutes, the Pre-sentence Report and defendant's allocution, and noting that the court "is not limited to the crime of conviction"); People v. Roe, 177 Misc.2d 960, 967 (Cty. Ct. Nassau Cty. 1998) ("court may base its decision on the pre-sentence report provided by probation, clinical assessments, victims' statements, and any materials submitted by the sex offender."); People v. Sumpter, 177 Misc.2d 492, 500-01 (Crim Ct. Queens Cty. 1998) (defendant, who pled guilty to attempted third degree rape, was assessed points for sexual intercourse and continuing course of sexual conduct by relying on language in the felony complaint, a supporting deposition signed by the victim, the probation report and the victim's medical records because the court is "not limited to the crime of conviction but considers the above in determining and offender's risk level"); Tucker, supra (in determining risk assessment level, court considered plea minutes, sentencing minutes, Grand Jury testimony, disciplinary history of the defendant, and defendant's statements at the time of his arrest); Richardson, supra (defendant who was charged with three counts of first-degree sodomy and one county of second-degree sodomy and who later pled guilty to first degree sexual abuse was found [*10]to have had multiple victims and engaged in deviate sexual intercourse based on his plea, the probation report, and the supporting depositions and statements of two victims"); People v. Terdeman, 175 Misc.2d 379 (Crim Ct. Queens Cty. 1997) (clear and convincing evidence of a course of sexual conduct where defendant pled guilty only to one count of attempted third degree rape based on victim's statement and sworn testimony which the court found to be credible); People v. Ross, 169 Misc.2d 308, 312 (Sup. Ct. New York Cty. 1996) (finding sexual intercourse occurred between the victims and the defendant where defendant was indicted for first-degree rape but pled guilty to attempted first-degree rape).
This Court notes that Defendant's reliance on Maldin, (supra), is misplaced. In that case, the court, as here, relied upon the victim's statements to police as contained in the Pre-Sentence Report and not just the final charge. These statements indicated that the defendant engaged in multiple acts of sexual misconduct with the victim, but only attempted to engage in deviate sexual intercourse. The Third Department held that the guidelines were misapplied by adding points for engaging in deviate sexual intercourse since the "deviate sexual intercourse contemplates commission of specific sexual acts rather than attempted commission of those acts as occurred here." Maldin, supra at 751. By contrast, here, when reviewing the victim's statements, and not just the final charge, it is clear that there were completed acts of sexual intercourse by Defendant and that he also acted in concert in allowing deviate sexual intercourse to be completed against the victim. His argument as to the 25 points being misappropriated to him thus fails.

Conclusion
By virtue of his conviction, the Court finds Defendant a Sexually Violent Offender. Additionally, Defendant is appropriately classified as a Risk Level 2. The felony complaint, Grand Jury testimony, victim's statement and Pre-sentence Report all establish by clear and convincing evidence that Defendant used forcible compulsion (10 points), had sexual intercourse with the victim and acted in concert with co-defendant Scott in having deviate sexual intercourse with her (25 points), and that the Defendant and victim were strangers (20 points). Indeed, Defendant acknowledged in his sworn guilty plea and statement in the Pre-Sentence Report that he engaged in sexual intercourse with the victim against her will. The fact that Defendant pled to a lesser included offense is of no consequence. Although Defendant claims that he and the victim knew each other, the self-serving statement does not overcome the clear and convincing evidence that he and the victim were strangers as established. 
In addition, Defendant's rap sheet indicates that he has a prior misdemeanor conviction (5 points), which he does not contest. Likewise, the Case Summary indicates that Defendant has admitted to abusing alcohol on the night of the incident and to completing a substance abuse program for his addiction (15 points).
Moreover, the Case Summary also indicates Defendant had disciplinary problems while in custody, including an act of sexual misconduct (20 points). Specifically, "during a visit with his wife and mother, [he] was observed with his hand 'in between his wife's legs, outside of clothing, rubbing her crotch vigorously.' He also was placed in Protective Custody in May 2003 after being slashed on his face for gang activity, i.e., 'unauthorized organization activity'" (Risk Assessment Instrument, p. 5). Therefore, Defendant was appropriately assessed a total of 95 points and classified as a Risk Level 2, and the Court so finds.
[*11]ORDERED, that Defendant is hereby adjudicated a Risk Level 2 Sexually Violent Offender. The foregoing constitutes the decision and opinion of the Court.
Dated: Bronx, New York
February 13, 2004
DOMINIC R. MASSARO,
Justice of the Supreme Court
Decision Date: February 13, 2004
Footnotes

Footnote 1:Pursuant to Civil Rights Law § 50 (b), the full name of the victim has been omitted.

Footnote 2:"Megan Kanka was a 7-year-old New Jersey girl who was sexually assaulted and murdered in 1994 by a neighbor who, unknown to the victim's family, had prior convictions for sex offenses against children. The crime gave impetus to laws for mandatory registration of sex offenders and corresponding community notification. . . . By 1996, every State, the District of Columbia, and the Federal Government had enacted some variation of Megan's Law." Smith v. Doe, 538 U.S. 84, 89-90, 123 S.Ct. 1140, 1145, 155 L.Ed.2d 164, 175 (2003).