OPINION OF THE COURT
Dennis K. McDermott, J.
The defendant was convicted, based on his plea of guilty, to one count of rape, second degree (Penal Law § 130.30), a class D felony, and sentenced on September 5, 2002 to an indeterminate period of incarceration of 1 to 3 years. He is now scheduled to be released on parole on April 25, 2004. The court is called upon to assess the risk of this defendant reoffending under Correction Law article 6-C (commonly known as the “Sex Offender Registration Act” or New York’s version of “Megan’s Law”).
The defendant has an extensive criminal history going back to 1989, including a 1993 conviction for sexual misconduct (at which time he was 20 years old), and ¿onvictions for criminal contempt in 1993 and 2000 and criminal trespass in 2000. In his most recent criminal case, the defendant had engaged in a sexual relationship with the 13-year-old daughter of his former girlfriend. Although it was alleged that the defendant had engaged in sexual intercourse with the I child on multiple occasions between August and December of 2000, he admitted to but a single instance of sexual intercourse with her. Prior to sentencing, he described his relationship with his victim as being more of a “father-daughter relationship.” Significantly, in February 2003, the defendant received a serious disciplinary report when he was observed in his cell, masturbating in front of a nurse.
The Board of Examiners of Sex Offenders has provided the court with a case summary and its recommendation that the defendant be adjudicated to be a “level 3”; risk of reoffense based upon a risk factor score of 145 points. The District Attorney is in agreement with the Board’s findings and recommendation.
The defendant argues that the Board improperly scored a total of 40 points in the risk assessment instrument. Specifically, he avers that it was improper to assess 20 points in factor No. 4 because he admitted only a single instance of sexual intercourse with the victim. Additionally, he objects to the assess *509 ment of 20 points in factor No. 6 on the ground that he was not aware that his victim suffered from some mental incapacity or disability.
The guidelines promulgated by the Board state that factor No. 4 “is designed to reflect the fact that some offenders, particularly those who prey on young children, manifest their compulsive behavior by engaging in a continuing course of sexual contact with the same victim. The offender who sexually abuses his girlfriend’s young daughter over a period of several weeks falls into this 20-point category.” (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 10 [Nov. 1997].)
In the case summary provided by the Board, it is stated that “[b]etween August, 2000, and December, 2000, [the defendant] perpetrated a continuous course of sexual misconduct with the victim by engaging her in acts of sexual intercourse. The victim stated that on ‘five or more instances’ she would wake up to find [the defendant] on top of her, subjecting her to sexual intercourse . ...” By contrast, when the defendant entered his plea of guilty to rape, second degree, he admitted only a single instance of misconduct. For that reason, he argues, it would be unwarranted to find that there had been a continuous course of misconduct on his part, thereby adding 20 points to his score.
In assessing a sex offender’s risk of reoffense, the court is not limited to the defendant’s admissions. (People v Marinconz, 178 Misc 2d 30 [Sup Ct, Bronx County 1998].) Instead, the court may credit the prior statements of his victim as well as any other relevant materials and evidence properly submitted. (See, Correction Law § 168-n [3].) This is all the more so where, as here, the defendant does not offer to give testimony on his behalf at the risk assessment hearing to support his contention. Hence, the Board properly found that a continuous course of misconduct was a factor, and the 20 points attributable thereto were properly added to the defendant’s score. (People v Madlin, 302 AD2d 751 [3d Dept 2003]; People v Wiggins, 1 Misc 3d 913[A], 2004 NY Slip Op 50057[U] [Sup Ct, Bronx County 2004].)
Turning to the defendant’s second argument, the Board included 20 points in his score under factor No. 5 owing to the tender age of the victim and added 20 more points under factor No. 6. The defendant claims he did not realize that the victim was mentally incapacitated or disabled, so it was improper to assess points to his score in this category.
*510 The guidelines addressing factor No. 6 state:
“Offenders who prey upon such victims [the mentally incapacitated or physically helpless] consciously choose people who cannot protect themselves or effectively report their abuse . . . Such offenders pose a greater risk to public safety since their crimes are more difficult to detect and prosecute. Absent extraordinary circumstances, an offender who has been assessed points for the age of his victim . . . should not be assessed points in this category to avoid double-counting.” (Risk Assessment Guidelines and Commentary, at 11.)
Had the assessment of points in this category been attributable to the victim’s mental incapacity, the defendant’s argument might have had merit. The case summary indicates that the defendant is “a dull-normal individual who . . . chooses victims as limited intellectually as he is.” However, nothing in the defendant’s presentence investigation report dated August 21, 2002 or any of the other materials under consideration even suggests that this victim was mentally retarded, developmentally disabled or otherwise mentally incapacitated or impaired. It may be that the Board deemed this otherwise normal 13 year old to be on the same intellectual plane as a “dull-normal” adult. In any event, the points in this category are fairly assessed because the defendant chose to Repeatedly victimize the child while she was sleeping and, thus, physically helpless. (People v Thiessen, 158 AD2d 737 [3d Dept 1990]; People v Irving, 151 AD2d 605 [2d Dept 1989]; People v Copp, 169 Misc 2d 757 [Rochester City Ct 1996].)
Unlike mental incapacity which is permanent in nature, physical helplessness due to natural sleep ¡is momentary so that upon awakening, the victim would not be under the same impediment in reporting the offense as she would be if she were mentally incapacitated. The concern expressed in the guidelines is the difficulty in detecting and prosecuting the crime because of the condition of the victim. This woulcl certainly apply where the victim suffers some significant mental impairment, but the incapacity from this type of physical helplessness disappears as soon as the victim awakens and regains consciousness. For this reason, the “double-counting” concern is not applicable where the victim was physically helpless due to natural sleep as opposed to mentally incapacitated. Thus, the Board properly assessed 20 points to the defendant’s score due to the victim’s age *511 and an additional 20 points due to the fact that the victim was asleep and therefore physically helpless.
The court’s review of the Board’s risk assessment instrument shows that the other various risk factors applicable to the defendant have been correctly identified and scored. The defendant’s total risk factor score is 145 points. Accordingly, the defendant is determined to be a level 3 (“high” risk) sex offender.