OPINION OF THE COURT
George B. Daniels, J.
On August 15, 1998, the defendant Louis Marinconz was released from State prison after serving a three-year sentence following his conviction on October 25, 1995 for sexual abuse in the first degree. The defendant, who was a Cadet leader of an eight-year-old boy, pleaded guilty to fondling the boy’s penis while staying overnight at the boy’s home. The court must now make a risk assessment determination pursuant to the Sex Offender Registration Act (Correction Law art 6-C [SORA]).
The Board of Examiners of Sex Offenders has recommended to the court that the defendant be assessed a risk level two. This recommendation was based on the Board’s use of its objective risk assessment instrument which assigns a numerical value to the existence of certain risk factors and totals the numerical points to arrive at the offender’s presumptive risk level (see, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 3 [Nov. 1997]). The Board found that the defendant’s total risk factor score was 100 points. This score, being more than 70 points but less than 110 points, falls within the numerical parameters set forth for a presumptive risk level two category. A level two designation indicates that the risk of repeat offense is moderate (see, Correction Law § 168-Z [6] [b]).
The defendant pleaded guilty before this court sitting as an acting Supreme Court Justice in Bronx County. I have since been elected a Supreme Court Justice in New York County. This sex offender’s risk assessment hearing was assigned to the Judge who currently sits in Bronx County, Part C. I asked that I be designated by the Deputy Chief Administrative Judge to sit in Bronx County, Part C for purposes of these SORA *32 proceedings. This court is acutely familiar with this case. The numerous correspondence and motions by this sex offender during his incarceration have also afforded this court additional insight into the defendant, and an opportunity to monitor his period of institutional confinement.
After receiving a risk assessment recommendation from the Board, the sentencing court must make a final judicial determination with respect to the level of notification (see, People v Salaam, 174 Misc 2d 726, 734 [Sup Ct, NY County 1997], citing Correction Law § 168-n [2]). The phrase “sentencing court” is not defined within the Act. Other States have held that the phrase “sentencing court” refers to the forum that had jurisdiction over the case, as opposed to the specific Judge (see, e.g., Morrow v State, 18 Kan App 2d 236, 849 P2d 1004 [1993]; People v Collins, 25 Mich App 609, 181 NW2d 601 [1970]). Although this State has not set forth a definition in statute or case law for the phrase “sentencing court”, it has been held that a Judge is not “the court” as a “court” is defined as an organized body with defined powers, meeting at certain times and places for the hearing and decisions of causes and other matters brought before it (see, People ex rel. Choate v Barrett, 56 Hun 351 [1st Dept 1890], affd 121 NY 678 [1890]; see also, Todd v United States, 158 US 278, 284 [1895], quoting United States v Clark, 1 Gall 497, 25 F Cas 441, 442 [No. 14,804] [“ ‘A court is not a judge, nor a judge a court. A judge is a public officer, who, by virtue of his office, is clothed with judicial authorities. A court is defined to be a place in which justice is judicially administered.’ ”]).
A sex offender need not be classified by the particular Judge who sentenced that sex offender. However, the Judge who personally presided over a sex offense case and sentenced the sex offender is usually in the best position to evaluate the potential danger posed by the defendant, and accordingly determine what is the proper level of notification owing to the public. This 37-year-old sex offender is a psychiatrically diagnosed and self-described pedophile. In 1995, recognizing the serious threat the defendant posed, this court ultimately rejected the original plea agreement negotiated between the prosecution and the defendant which sought a sentence of probation, coupled with the imposition of certain conditions. This court sentenced the defendant to an indeterminate State prison sentence of one to three years.
The defendant seeks a downward departure from the presumptive risk level two to a risk level one. The defendant *33 and defense counsel appeared for a hearing on August 19,1998. The Bronx District Attorney’s Office declined to appear indicating that it routinely takes no position with regard to sex offender classifications. The State Attorney-General’s Office was notified, but did not appear. No one has moved on behalf of the State for an upward departure from the level two recommendation of the Board.
Due process mandates that the State must bear the burden of proof to support its proposed risk level assessment by clear and convincing evidence (see, Doe v Pataki, 3 F Supp 2d 456 [SD NY 1998]; see also, People v Salaam, supra). However, even where departure from the calculated presumptive risk level is not requested, it is still appropriate for the court to independently consider whether a departure from the recommendation is warranted (see, People v Lombardo, 167 Misc 2d 942 [Nassau County Ct 1996]; People v Tucker, 177 Misc 2d 418 [Nassau County Ct 1998]). The Board serves only in an advisory capacity similar to the role served by a Probation Department in submitting a sentencing recommendation. The court is not bound by the recommendation of the Board and, in the exercise of its discretion, may depart from the recommendation and determine the sex offender’s risk level based upon the facts and circumstances that appear in the record (see, Matter of New York State Bd. of Examiners of Sex Offenders v Ransom, 249 AD2d 891 [4th Dept 1998]).
Similarly, the court need not accept at face value the allocation of risk factor points by the Board, even where there has been no challenge. The court may still wish to scrutinize the underlying circumstances that the Board relied upon in assessing risk. This is especially true when the information in the record before the court appears to be more extensive than that relied upon by the Board. In assessing risk, the Board or the court may rely upon the case file, the sex offender’s admissions, the victim’s statements, the evaluative reports of the supervising probation officer, parole officer, or corrections counselor, or any other reliable source (see, Guidelines, op. cit., at 5). After considering the Board’s recommendation, any victim’s statement, any statement or materials submitted by the sex offender, and reliable information in the case file, the sentencing court bears the ultimate responsibility to determine whether the Board’s presumptive risk level recommendation appropriately reflects the risk posed to the public, or whether departure from that recommendation is warranted.
An upward or downward departure from the presumptive risk level is warranted where there is clear and convincing ev *34 idence of the existence of an aggravating or mitigating factor of a kind, or to a degree, not otherwise adequately taken into account by the Guidelines (see, People v Salaam, supra). The court should consider departure from the presumptive risk level where either the State or the defendant seeks an upward or downward departure and offers clear and convincing evidence to support departure. The court should sua sponte depart from the presumptive risk level when it is clearly evident from the record before the court that special circumstances warrant departure.
An objective risk assessment instrument, no matter how well designed, will not fully capture the nuances of every case (see, Guidelines, op. cit., at 4). In this case, the Board’s presumptive risk level calculations resulted in an underassessment of this sex offender’s risk to the public safety. Firstly, in allocating points to the defendant with respect to the current offense, the Board chose not to assess any points for more than one victim. The existence of multiple victims of sexual contact is indicative of compulsive behavior, and is therefore a significant factor in assessing the offender’s risk of reoffense (see, Guidelines, op. cit., at 10). To determine the number of victims, neither the Board nor the court is limited solely to the dispositional charge to which the defendant pleaded guilty. In this case, although the defendant was charged and pleaded guilty to fondling an eight-year-old boy, the presentence report notes that the mother of the victim stated, “[t]he defendant also kissed my four year old son Leo, in the mouth. Leo has never forgotten the incident, and he is now afraid of all men.” The Board did not assess any points for the defendant kissing a four-year-old boy in the mouth. However, the defendant’s conduct in this regard constitutes “sexual contact” within the meaning of the statute defining first degree sexual abuse (see, Matter of David V., 226 AD2d 319 [1st Dept 1996] [kissing three year old on mouth]; see also, Penal Law § 130.00 [3]). In determining risk assessment under the Guidelines, sexual contact includes intimate touching or kissing for the purpose of sexual gratification.
The Board also did not assess any points against the defendant for his nonacceptance of responsibility. A guilty plea may provide some evidence of a defendant’s acceptance of responsibility. However, it does not, by itself, constitute a sincere acknowledgment of personal culpability (see, People v J. G., 171 Misc 2d 440 [Sup Ct, Richmond County 1996]). For example, an offender who pleads guilty but tells his presen *35 tence investigator that he did so only to escape a State prison sentence has not accepted responsibility (see, Guidelines, op. cit., at 15).
In this case, the Board noted that the defendant admitted his guilt. He stated he fondled the victim for pleasure, but at times indicated that he remembers nothing about the instant offense or his criminal history as a result of a severe beating he received in retaliation for his crime. At the time of sentence in 1995, defendant’s psychiatrist noted that, “[although [the defendant] does not remember any pedophilic acts on his part, he personally accepts responsibility for Ms actions and says that if he was accused of these actions that he did them.” A second examining psychiatrist noted that the defendant stated he “rubbed this little boy’s penis.” But later, when confronted with both his admission of guilt to the Probation Department and his claims of lack of memory, he stated, “that is my thing toucMng boys (genital area) so I must have done it.” An individual cannot accept responsibility for committing a crime while at the same time denying memory of his criminal conduct.
The defendant wrote this court many times during Ms incarceration denying that he ever admitted to fondling the victim for pleasure. In an April 22, 1997 letter, he stated, “[The Probation Officer] writes * * * I did not express any remorse for the crime. Your honor, how does one show remorse for an incident or crime that they are accused of, but due to documented brain injury, cannot, and don’t remember.” In a May 14, 1997 letter, he wrote, “if during the entire court proceedings I continually claimed that I had no recollection of the crime, why would I openly admit to [the] Probation Officer * * * that I committed the crime.” In a June 2, 1997 letter, the defendant stated, “You were quick to sentence me to 1 to 3 years on the alleged offense that to this day I cannot remember due to my brain injury.” At the recent risk assessment hearing, the defendant claimed no memory whatsoever of ever committing any sexual offenses.
The Guidelines themselves stress that both the Board and the court should examine the offender’s most recent credible statements and should seek evidence of genuine acceptance of responsibility (see, Guidelines, op. cit, at 15). Here, there is no such genuine acceptance of responsibility. Quite notably the defendant’s letters are after he completed the prison’s mandatory sexual treatment program. While neither admitting nor denying Ms latest offense, he nonetheless expressed Ms willing *36 ness to continue participating in the sex offender treatment program saying “better safe than sorry” and “just in case”.
An acknowledgment of responsibility is critical to the treatment of sex offenders as an offender’s ability to identify and modify the thoughts and behavior that are proximal to his sexual misconduct is often a prerequisite to stopping the misconduct (see, Guidelines, op. cit., at 15). Therefore, this sex offender’s denial of responsibility is evidence that he has not benefitted from the program, and evidence that his deviant sexual conduct remains unaffected, and thus undeterred. As the Guidelines point out, an offender who does not accept responsibility for his conduct is a poor prospect for rehabilitation (see, Guidelines, op. cit., at 15).
The court is further troubled by the fact that the defendant received no points with regard to his release environment. Where a defendant is released with specialized supervision, no points are assessed. The Board stated in its case summary, that “Mr. Marinconz is scheduled to be conditionally released to parole supervision on August 15, 1998 and it is anticipated that upon his release he will be on a specialized case load.” Specialized case load generally permits more intensive supervision and provides for the offender to enroll in a treatment program (see, Guidelines, op. cit., at 16). What the Board failed to recognize is that because of the length of the prison sentence served, the defendant is only on parole until October 15, 1998. Thus, the defendant will only be supervised for approximately eight weeks. In order to constitute adequate supervision, both the nature and length of the supervision must be appropriate (see, e.g., Matter of M.G. v Travis, 236 AD2d 163 [1st Dept 1997]). The type of supervision must be proper and the period of supervision must be significant. For the Board to rely upon an eight-week period as a basis to conclude that this sex offender will be under specialized supervision, and hence poses a lesser danger to the public, defies logic. “Strict supervision is essential when a sex offender is released into the community” (Guidelines, op. cit, at 16). After this eight-week period, SORA does not give the State the right to later petition the court for an upward departure on the basis of a change in circumstances. After this court makes a risk assessment determination, only the defendant is statutorily afforded the right to petition the court seeking to be relieved of any further duty to register (see, Correction Law § 168-o).
This court further finds that, although the defendant received the maximum amount of points with respect to the *37 number and nature of his prior crimes, the objective risk assessment instrument itself cannot adequately take into consideration this pedophile’s criminal history. Prior to his latest offense, the defendant was arrested, in 1987, for criminal impersonation of a police officer and endangering the welfare of a child. The defendant approached two boys, identified himself as a police officer and displayed a badge. A police officer, who observed the defendant’s actions, intervened believing that the defendant was attempting to seduce or solicit the boys. The defendant pleaded guilty and received three years’ probation. In 1985, the defendant was also arrested for criminal impersonation and criminal trespass. In that case, the defendant dressed up in a fire marshall’s uniform and went into two public elementary schools posing as a fire marshall. He was sentenced to 60 days in jail.
When the defendant impersonated a fire marshall, he was already on probation with respect to an earlier 1985 conviction in which he pleaded guilty to sexual abuse. There, the defendant sexually abused his paramour’s nine-year-old son by fondling the child’s anus and rubbing his genitals against the child’s genitals. This was another offense for which the defendant pleaded guilty but denied his guilt or any knowledge of the offense in that presentence report. The defendant was sentenced to three years’ probation.
As early as 1984 at the age of 23, the defendant was also arrested for criminal impersonation of a police officer and criminal possession of a weapon with intent to use. He pleaded guilty to disorderly conduct in satisfaction of all the charges and received a sentence of a $50 fine or 10 days in jail. According to the defendant, he developed an interest in younger boys, ages 8 to 10, when he was approximately 16 or 17 years old.
This sex offender has repeatedly attempted to foster relationships with children for the purpose of seduction. He has a pattern of impersonating police officers and firefighters for the purpose of gaining access to children. Children are taught from an early age to trust these public servants and to seek their assistance when in need of aid. The defendant’s brazen conduct not only demonstrates the defendant’s cunningness to lure young, naive boys into perilous situations, but it also demonstrates that his paramount objective is to prey on the young. Those who frequently victimize children develop complicated techniques for obtaining access to children (see, American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM TV [4th ed 1994]). Offenders who target *38 young children as their victims are more likely to reoffend (see, Guidelines, op. cit., at 11). The fact that his criminal impersonations were discovered prior to any completed sexual acts does not affect the significance of the history of the defendant’s criminal behavior. An offender who intended to engage in sexual activity with his victim but is prevented from doing so by some factor other than his own change of mind, such as police intervention, still poses a serious threat to the community (see, Guidelines, op. cit., at 9).
The presentence report quoted the victim’s mother as saying that the defendant acted like a father to her child. The mother recognized that the defendant had “conned” her and indicated that she wished the defendant would “not be set free to continue destroying children’s lives.” A person with whom a relationship has been established or promoted for the primary purpose of victimization presents a heightened concern for public safety and need for community notification (see, Guidelines, op. cit., at 12). The specific example given by the Guidelines in this regard is a scout leader who chooses his profession to gain access to victims and “grooms” his victims before sexually abusing them. This defendant, who was the victim’s Cadet leader, has demonstrated on numerous occasions over the years that he will do anything to gain access to a child.
The defendant’s own psychiatrist, as well as the psychiatrist who conducted the defendant’s presentence treatment evaluation, have diagnosed him as suffering from “pedophilia, non exclusive, with sexual attraction to males.” The Guidelines provide that a clinical assessment that the offender has a psychological, physical or organic abnormality that decreases his ability to control impulsive sexual behavior is itself an overriding factor automatically resulting in a presumptive risk assessment of level three. “Examples of a clinical assessment that would support an override are pedophilia and sexual sadism” (Guidelines, op. cit, at 17). Moreover, a “sexually violent predator” means, among other things, a sex offender who suffers from a mental abnormality that makes such person likely to engage in predatory sexual conduct (see, Correction Law § 168-a [7]). The defendant’s pedophilic interests have existed for approximately 20 years, and his criminal history, which appears to be related solely to his pedophilic impulses, spans a 13-year period. This court has no confidence that this sex offender merely poses a moderate risk to the public as the Board concluded, and certainly not a low risk as the defendant *39 contends. This sex offender poses a very serious threat to children. As the presentence report aptly pointed out in 1995: “The instant offense is consistent with this defendant’s escalating pattern of anti-social criminal behavior. His criminal history dates back to 1984 and has continued unabated by prior court imposed probation or correctional sanctions. A probation failure, he remains undeterred and a serious threat to children. The defendant is fully culpable for his behavior. He did not express any remorse or concern for the eight year old victim he traumatized, by sexually deviant acts herein. Having failed to derive sustaining benefit from years of previous psychiatric intervention and treatment the outlook for this immature and non-insightful personality is necessarily pessimistic.”
A mere mechanical application of the Guidelines is not the appropriate manner in which to classify this offender. As risk assessment determinations become routine, the sentencing court must continue to fully exercise its independent judgment to ensure an accurate final judicial determination given the importance of the individual and public interests involved in designating an appropriate risk level. Here, there is clear and convincing evidence of the existence of aggravating factors of a kind, or to a degree, not otherwise taken into consideration by the Guidelines. In spite of the lower recommendation by the Board, and even in the absence of a request for an upward departure, this court finds that special circumstances warrant an upward departure from the presumptive risk level two to a level three. The court finds, pursuant to the Sex Offender Registration Act, that the risk of repeat offense is high and that there exists a threat to the public safety. Accordingly, the defendant is deemed a sexually violent predator and a risk level three designation is hereby assigned to this sex offender.