OPINION OF THE COURT
Richard A. Molea, J.
On July 8, 2009, upon the personal appearance of the defendant with defense counsel, Glen Malia, Esq., and the appearance of Assistant District Attorney Michelle Lopez, this court conducted a risk level determination proceeding under the *535 dictates of Correction Law article 6-C, otherwise known as the Sex Offender Registration Act (hereinafter SORA). Pursuant to the requirements of Correction Law § 168-d, this proceeding was conducted in a manner consistent with the guidelines set forth in subdivision (5) of Correction Law § 168-Z, which require the hearing court to determine the duration of the sex offender’s registration obligations under Correction Law § 168-h, the degree of risk of re-offense presented by the sex offender insofar as same is relevant to the nature of the sex offender’s notification obligations under Correction Law § 168-Z (6), and the designation of the sex offender as either a “sexually violent offender,” a “predicate sex offender” or a “sexual predator” within the meaning of Correction Law § 168-a (7). Upon completion of the instant SORA risk level determination proceeding, this court makes the following findings of fact and conclusions of law:
Findings of Fact
Upon the entry of the defendant’s guilty plea before this court on September 4, 2008, the defendant was convicted of a single count of sexual abuse in the first degree as charged under count three of the instant indictment and in full satisfaction of the remaining counts charged therein. In connection with the entry of his guilty plea, the defendant allocuted to having engaged in sexual contact between his penis and another male’s anus by forcible compulsion. On October 30, 2008 the defendant was sentenced by this court to serve a determinate term of imprisonment of two years and a three-year term of postrelease supervision in conjunction with the imposition of the mandatory surcharge, DNA fee, and SORA fee. During the course of the instant risk assessment determination hearing, the court invited both the People and the defense to submit relevant material concerning the subject matter of this proceeding to the court for its consideration.
For the court’s consideration, the People submitted several documents including a risk assessment instrument (RAI) and case summary which were admitted into evidence as People’s exhibit No. 1A, an amended risk assessment instrument which was admitted into evidence as People’s exhibit No. IB, a copy of the instant indictment which was admitted into evidence as People’s exhibit No. 2, a copy of a police report prepared by Detective Ralph D’Aliso of the Peekskill Police Department which was admitted into evidence as People’s exhibit No. 3, a copy of a voluntary statement taken from the defendant by *536 Detective Marcos Martinez which was admitted into evidence as People’s exhibit No. 4, a copy of the defendant’s presentence investigation report which was admitted into evidence as People’s exhibit No. 5, a copy of the grand jury testimony of the victim in this case which was admitted into evidence as People’s exhibit No. 6, and a copy of the grand jury testimony of Police Officer Elizabeth Folch of the Peekskill Police Department. The defense declined to submit any material for the court’s consideration in connection with this proceeding.
In reliance upon their submission of the above-referenced materials and the oral argument they presented, the People submit that the defendant should be designated a presumptive risk level two sex offender based upon the allocation of 85 points to his total risk factor score. As proposed by the People, the recommended total risk factor score of 85 points would be derived from the allocation of 15 points pursuant to RAI risk factor 1 “Use of Violence,” 25 points pursuant to RAI risk factor 2 “Sexual Contact with Victim,” 20 points pursuant to RAI risk factor 7 “Relationship between Offender and Victim,” 15 points pursuant to RAI risk factor 11 “Drug or Alcohol Abuse,” and 10 points pursuant to RAI risk factor 12 “Acceptance of Responsibility.” Furthermore, the People seek an upward departure from the defendant’s presumptive risk level two designation to a risk level three designation in reliance upon the allegation that the defendant sexually assaulted the victim with knowledge of his mental disability.
In opposition to the People’s argument in support of a presumptive risk level two designation, the defense argues that a total of only 45 points should be allocated to the defendant’s total risk factor score. Specifically, the defense submits that only 10 points should be allocated to the defendant’s total risk factor score pursuant to RAI risk factor 1 “Use of Violence,” and that no points should be allocated pursuant to either RAI risk factor 7 “Relationship between Offender and Victim” or RAI risk factor 12 “Acceptance of Responsibility,” which would result in a total risk factor score of 45 points and a presumptive risk level one designation. Furthermore, in opposition to the People’s argument in support of an upward departure from a presumptive risk level two designation to a risk level three designation, the defense argues that the court should deny the People’s upward departure application based upon his claim that there was insufficient evidence adduced at this proceeding in support of the People’s claim that the victim is mentally disabled.
*537 Conclusions of Law
Pursuant to article 6-C of the Correction Law, this court is required to determine the duration of the defendant’s registration obligations upon application of the guidelines set forth in Correction Law § 168-Z (5), and to determine the defendant’s level of notification upon consideration of the factors set forth in Correction Law § 168-Z (6). In this regard, the Board of Examiners of Sex Offenders (hereinafter Board) has developed the RAI to serve as a computational table which is designed to enable the courts to make the required calculations for the purpose of determining the appropriate level of notification and duration of registration applicable to those defendants who are convicted of a “sex offense” within the meaning of Correction Law § 168-a (2) or (3). The RAI allocates a point total to each of the statutory recidivism risk factors listed in Correction Law § 168-Z (5) and adds the total number of points allocated to a particular sex offender to reach a total risk factor score, which provides for one of three distinct levels of notification and registration requirements, identified as risk level one, risk level two or risk level three.
Pursuant to a risk level one designation, the local police receive information from the Board about a sex offender residing in their jurisdiction and may disseminate relevant information concerning the sex offender to any entity with vulnerable populations (Correction Law § 168-Z [6] [a]). In addition, a caller to the “900” telephone hotline can obtain confirmation that an identified individual is known to be a sex offender (Correction Law § 168-p [1]). A risk level one sex offender is also required to register annually for a period of 20 years with the Division of Criminal Justice Services (hereinafter DCJS) by filing a written form (Correction Law §§ 168-f, 168-h) and must advise DCJS of any change of address in writing at least 10 days prior to such change (Correction Law § 168-f [4]).
Pursuant to a risk level two designation, the local police may notify “entities with vulnerable populations” of a risk level two sex offender’s identity, including photograph and approximate address, as well as background information about the crime including the manner of commission and type of victim, and any special conditions imposed by the sentencing court, probation department, or parole board, which may also be disseminated through the “900” telephone hotline (Correction Law § 168-p [1]) and such information is also available to the public through the Internet at New York State Division of Criminal Justice *538 Services, http://criminaljustice.state.ny.us/nsor/index.htin (accessed Aug. 6, 2009). A risk level two sex offender is also required to register annually for life with the DCJS by filing a written form (Correction Law §§ 168-f, 168-h) and must advise DCJS of any change of address in writing at least 10 days prior to such change (Correction Law § 168-f [4]).
Pursuant to a risk level three designation, a sex offender is required to register annually with DCJS for life by filing a written form (Correction Law §§ 168-f, 168-h) and any change in address must be reported to DCJS in writing 10 days prior to such change (Correction Law § 168-f [4]). Furthermore, the risk level three sex offender must personally verify his or her address every 90 calendar days with the local law enforcement agencjf having jurisdiction in the area of his or her residence (Correction Law § 168-f). The local law enforcement agency may also disseminate all of the information available for risk level three sex offenders, in addition to the exact street address. Furthermore, DCJS is required to distribute a subdirectory of all risk level three sex offenders to local law enforcement agencies, where it is to be made available for public inspection through the Internet at New York State Division of Criminal Justice Services, http://criminaljustice.state.ny.us/nsor/index.htm (accessed Aug. 6, 2009) (Correction Law § 168-q).
Upon considering the recommendation of the People evinced through the RAI prepared in connection with the instant proceeding, this court has considered the Risk Assessment Guidelines and Commentary prepared by the Board in connection with the calculation of the defendant’s total risk factor score and presumptive risk assessment level. In connection with the calculation of a sex offender’s total risk factor score, the court is mindful that “[p]oints should not be assessed for a factor . . . unless there is clear and convincing evidence of the existence of that factor” (see Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 5 [2006]; see also People v Salaam, 174 Misc 2d 726 [1997]). As the defense concedes that the allocation of 25 points pursuant to RAI risk factor 2 and the allocation of 15 points pursuant to RAI risk factor 11 are appropriate, the court will only address the merits of the People’s recommendation that the court allocate 15 points to the defendant’s total risk factor score pursuant to RAI risk factor 1, 20 points pursuant to RAI risk factor 7 and 10 points pursuant to RAI risk factor 12.
*539 With respect to RAI risk factor 1, the People argue that the court should allocate 15 points toward the defendant’s total risk factor score upon a finding that the defendant inflicted “physical injury” upon the victim when he penetrated the victim’s anus with his penis, causing him to sustain bleeding from the area of his rectum. These claims are advanced by the People through reliance upon the report of Detective Ralph D’Aliso, admitted into evidence at this proceeding as People’s exhibit No. 3, relating the defendant’s admission to anal penetration of the victim, as well as his own observations of subsequent bleeding from the victim’s rectal area. In addition, the People also submit the grand jury testimony of the victim, admitted into evidence at this proceeding as People’s exhibit No. 6, relating that he experienced rectal pain beyond the date of the crime, as well as the grand jury testimony of Police Officer Elizabeth Folch, admitted into evidence at this proceeding as People’s exhibit No. 7, relating that she observed bleeding from the victim’s rectal area. The defense opposes the People’s application, arguing that the court should allocate only 10 points to the defendant’s total risk factor score pursuant to RAI risk factor 1 “Use of Violence,” rather than the 15 points requested by the People, due to the alleged insufficiency of proof that the defendant either inflicted physical injury to the victim when he sexually assaulted him, or caused the victim to experience substantial pain as a result of same.
Upon consideration of the Risk Assessment Guidelines and Commentary promulgated by the Board to define the appropriate scope of RAI risk factor 1, the Board explicitly indicates that the term “physical injury” utilized in this category shall be defined in a manner consistent with the terms of Penal Law § 10.00 (9), which provides that “ ‘physical injury’ means impairment of physical condition or substantial pain” (see Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 8 [2006]). In this regard, the Board’s commentary makes specific reference to Matter of Philip A. (49 NY2d 198 [1980]), where the Court of Appeals held that the complainant’s failure to specify the degree of pain he experienced as a consequence of the defendant’s punches compelled the Court to conclude that the adduced evidence was insufficient to establish that the complainant had sustained “physical injury” within the meaning of Penal Law § 10.00 (9). Here, it is significant to note that the victim’s grand jury testimony reflected nothing more than a *540 vague account of the pain he experienced as a consequence of the defendant’s sexual assault, as well as an inconsistent account of the duration of the pain he experienced. As a result, the victim’s description of the pain he endured as a result of the defendant’s sexual assault was insufficient to establish physical injury within the meaning of Penal Law § 10.00 (9) (see Matter of Philip A., 49 NY2d 198 [1980]; see also People v Tabachnik, 131 AD2d 611 [1987]; cf. People v Tomczak, 189 AD2d 926 [1993]). However, consistent with those cases where the courts have held that the tearing of a female child’s hymen is sufficient to establish physical injury to that child within the meaning of Penal Law § 10.00 (9), this court finds that the uncontroverted evidence submitted here of the trauma-induced rectal bleeding sustained by the victim constitutes conclusive clear and convincing evidence of physical injury (see People v Fisher, 22 AD3d 358 [2005]; People v Painter, 221 AD2d 481 [1995], lv denied 87 NY2d 976 [1996]; People v Hannah, 267 AD2d 402 [1999]). Accordingly, the People’s application seeking the allocation of 15 points under RAI risk factor 1 toward the defendant’s total risk factor score is granted.
With respect to RAI risk factor 7, the People argue that the court should allocate 20 points toward the defendant’s total risk factor score upon a finding that the defendant established his one-night relationship with the victim for the purpose of grooming him as a target for his sexual assault. In support of this recommendation, the People suggest that the defendant’s extension to the already intoxicated victim of an invitation to attend a party where alcohol was being served constituted grooming behavior designed to prepare the victim for the subsequent sexual assault and is sufficient to justify the allocation of the 20 points available under RAI risk factor 7 toward the defendant’s total risk factor score. The defense challenges the People’s argument by asserting that the relationship between the defendant and victim had been established four months prior to the crime date, which undermines the People’s claim characterizing the defendant’s interaction with the victim as grooming behavior.
The Board’s application of risk factor points for offenders who establish and promote a relationship with a potential victim for the primary purpose of victimization is premised upon the concern that this type of grooming behavior provides for a heightened risk for public safety (see Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment *541 Guidelines and Commentary, at 12 [2006]). Here, the defendant’s extension of an invitation to the victim to continue drinking with him despite his already intoxicated condition coupled with the lack of any previous relationship between them beyond familiarity with one another’s appearance, clearly evinces the defendant’s intention to groom the victim as a potential victim for his subsequent sexual assault. Accordingly, the People’s application seeking the allocation of 20 points under RAI risk factor 7 toward the defendant’s total risk factor score is granted.
With respect to RAI risk factor 12, the People argue that the court should allocate 10 points toward the defendant’s total risk factor score upon a finding that the defendant has failed to accept responsibility for his criminal conduct. In support of this application, the People submit that the defendant’s purported acceptance of responsibility for his criminal conduct should be rejected by the court due to his efforts to minimize his responsibility for sexually abusing the victim. The People support this argument through reference to the defendant’s statements to Probation Officer Tina Marshall during his presentence investigation interview, admitted into evidence at this proceeding as People’s exhibit No. 5. Specifically, the People refer the court to those statements made by the defendant indicating, in substance, that he did not hold the victim to the ground while covering his mouth and forcing his penis into the victim’s rectum. In opposition to the People’s claim that the defendant failed to accept responsibility for his criminal conduct, the defense argues that the defendant’s entry of his guilty plea to the crime of sexual abuse in the first degree and his participation in sex offender treatment is sufficient to establish his acceptance of responsibility.
In this regard, the court finds it significant that although the defendant claims to take full responsibility for his sexual abuse of the victim, his lack of credibility in this regard is revealed by his statement to Probation Officer Marshall relating that he did not force his penis into the victim’s rectum. Although it is laudable that the defendant has commenced participation in sex offender treatment, the disturbing implication of this account reflects the defendant’s attempt to minimize his responsibility for sexually assaulting the victim. It is now well-settled that such statements of a defendant minimizing his responsibility for the commission of an offense to which a plea of guilty was entered do not reflect a “genuine accep-
*542 tance of responsibility” pursuant to the Risk Assessment Guidelines developed by the Board (see People v Mitchell, 300 AD2d 377 [2002], lv denied 99 NY2d 510 [2003]; People v Chilson, 286 AD2d 828 [2001]; People v Marinconz, 178 Misc 2d 30, 35 [1998]). Based upon the foregoing, the court concludes that the defendant’s minimization of his responsibility for the commission of the underlying offense evinces his failure to express a genuine acceptance of responsibility and merits the imposition of the 10 points available under RAI risk factor 12 toward the defendant’s total risk factor score. Accordingly, the People’s application seeking the allocation of 10 points under RAI risk factor 12 toward the defendant’s total risk factor score is granted.
Upon consideration of the foregoing, the court finds that after allocating the applicable point total to each of the statutory recidivism risk factors set forth in the RAI, a total of 85 points is appropriately allocated to the defendant’s total risk factor score, which provides for a presumptive finding that the defendant should be designated a risk level two sex offender. As the defendant’s total risk factor score results in a presumptive finding that he is a risk level two sex offender, the court will consider the People’s application seeking an upward departure from the presumptive risk level two designation to a risk level three designation.
Although the presumptive risk level provides a rebuttable presumption, the calculation reached by the courts upon utilization of the RAI will generally “result in the proper classification in most cases so that departures will be the exception not the rule” (Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 4 [2006]; see People v Williams, 19 AD3d 388 [2005], lv denied 5 NY3d 713 [2005]; see also People v Guaman, 8 AD3d 545 [2004]). Upon consideration of an application seeking a departure from a presumptive risk assessment level, the courts are specifically authorized to depart from same when “there exists an aggravating or mitigating factor of a kind, or to a degree, not otherwise adequately taken into account by the guidelines” (Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 4 [2006]; see People v White, 25 AD3d 677 [2006], lv denied 6 NY3d 715 [2006]). In this regard, there must exist clear and convincing evidence of the existence of special circumstances to warrant a departure from the presumptive risk level (see People *543 v Valentine, 15 AD3d 463 [2005]; People v Skellen, 4 AD3d 863 [2004]; People v Delmarle, 2 AD3d 1446 [2003]; People v Baker, 303 AD2d 570 [2003]; People v Bottisti, 285 AD2d 841 [2001]).
Turning to consider the People’s application for an upward departure from the defendant’s presumptive risk level two designation to a risk level three designation, the People submit that the defendant’s sexual assault of a mentally disabled victim, who was physically incapable of defending himself from the defendant’s assault due to his intoxication and lack of compatible strength, represents an aggravating factor which is not otherwise adequately taken into account by the Guidelines. The defense opposes the instant upward departure application by claiming that the People have failed to adduce sufficient evidence during this proceeding which evinces the victim’s mental disability. Upon consideration of the defendant’s argument, the court notes that although the People concede that the victim’s mental disability is not adequately pronounced to satisfy the definition of “mental disability” provided under Penal Law § 130.00 (5), Police Officer Folch’s grand jury testimony, admitted into evidence at this proceeding as People’s exhibit No. 7, provides a clear indication of the victim’s mental disability based upon his manner of slow speech, his inability to articulate basic personal information and his age-inappropriate behavior. Furthermore, the defendant’s admissions to Detective D’Aliso, admitted into evidence at this proceeding as People’s exhibit No. 4, reveal that the defendant was fully aware of the extent of the victim’s mental disability at the time of the sexual assault. As a result, the court finds that the People have adduced clear and convincing evidence indicating that the defendant targeted and groomed the victim in this case for a sexual assault with knowledge of his mental disability and his diminished capability for self-defense due to his intoxication and lack of compatible strength.
Upon consideration of the foregoing, the court finds that the defendant’s targeting and grooming of the mentally disabled victim in this case constitutes an aggravating factor of a kind not otherwise adequately taken into account by the guidelines set forth on the RAI, bearing on the defendant’s risk of recidivism and the threat he poses to the public’s safety within the meaning of Correction Law § 168-Z (6) (c) (see People v Jenkins, 34 AD3d 352 [2006], lv denied 8 NY3d 805 [2007]; People v Seils, 28 AD3d 1158 [2006], lv denied 7 NY3d 709 [2006]; People v Thornton, 34 AD3d 1026 [2006]; People v *544 Heichel, 20 AD3d 934 [2005]), which warrants an upward departure from the defendant’s presumptive risk level two designation to a risk level three designation (see People v Stevens, 4 AD3d 786 [2004]; People v Skellen at 863; People v Delmarle at 1446; Matter of O’Brien v State of N.Y. Div. of Probation & Correctional Servs., 263 AD2d 804, 805-806 [1999], lv denied 94 NY2d 758 [1999]; People v Marinconz, 178 Misc 2d 30, 33-34 [1998]).
With respect to the court’s additional obligation to determine whether the defendant shall be designated a sexually violent offender, predicate sex offender or sexual predator, within the meaning of Correction Law § 168-a (7), the People and the defense have properly stipulated and agreed that the defendant’s plea of guilty to the crime of sexual abuse in the first degree, as a designated offense listed in Correction Law § 168-a (3) (a) (i), requires that the defendant be designated a sexually violent offender within the meaning of Correction Law § 168-a (7) (b), for the purpose of determining his applicable level of notification.
Accordingly, as the record of this proceeding establishes that there has been a showing sufficient to establish that special circumstances exist which warrant an upward departure from the defendant’s presumptive risk level two designation to a risk level three designation, the defendant is hereby designated to be a risk level three sex offender, as well as a sexually violent offender, and is directed to timely comply with the registration provisions which are implicated by this decision and order, as set forth in article 6-C of the New York State Correction Law.